**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Before the Honorable: Claire R. Kelly, Judge**

| | |
|---|---|
| OTTER PRODUCTS, LLC<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES, ET AL.,<br><br>          Defendants. | Court No. 22-00033<br><br>**PUBLIC VERSION**<br>Confidential Information<br>Designated in Brackets ([ ])<br>Confidential Information Redacted<br>on pages 7, 9, 12, and 17 |

**PLAINTIFF OTTER PRODUCTS, LLC'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

*/s/ Louis S. Mastriani*
Louis S. Mastriani
Lydia C. Pardini
Juan J. Garcia
**AMS TRADE LLP**
1133 Connecticut Avenue, NW
Suite 1200
Washington, D.C. 20036
Telephone: (202) 467-6300
Facsimile: (202) 466-2006
E-Mail: mastriani@amstrade.com

*Counsel for Otter Products, LLC*

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   ADMINISTRATIVE DETERMINATIONS UNDER REVIEW ....................... 2

III.  ISSUE PRESENTED .................................................................................... 2

IV.   JURISDICTION ........................................................................................... 3

V.    LEGAL FRAMEWORK & STANDARDS ..................................................... 3

      A.    Standard of Review ............................................................................ 4

      B.    Declaratory Judgment ...................................................................... 5

VI.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 5

      A.    Pre-Litigation History ....................................................................... 5

            1.    First Prior Disclosure – Assists (Anchorage) ........................... 5

            2.    Second Prior Disclosure – Clerical Errors (Anchorage) ........... 7

            3.    Third Prior Disclosure – Assists (Long Beach) ....................... 9

      B.    Classification Litigation .................................................................. 12

      C.    CBP's Refund of Duty Overpayments Without Interest .................... 15

VII.  SUMMARY OF THE ARGUMENT ............................................................ 19

VIII. ARGUMENT ............................................................................................. 20

      A.    Defendants' Governing Statutes Authorize And Require Refunds
            On Duty Overpayments With Interest ............................................. 21

      B.    Defendants' Prior Disclosure Governing Statutes Limit Maximum
            Penalties For Lawful Duty Overpayments And Do Not Authorize
            Withholding Interest on Unlawful Duty Overpayments ..................... 24

      C.    Defendants' Failure to Refund Duty Overpayments With Interest Is
            Contrary to Law And Equity ........................................................... 26

IX.   CONCLUSION ........................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Motorists Ins. Co. v. United States,*
    8 F. Supp. 2d 874 (Ct. Int'l Trade 1998) ...................................................................21, 23, 24

*Canadian Wheat Bd. v. United States,*
    637 F. Supp. 2d 1329 (Ct. Int'l Trade 2009) ...........................................................................5

*Gilead Scis., Inc. v. Lee,*
    778 F.3d 1341 (Fed. Cir. 2015)................................................................................................21

*Gilda Indus., Inc. v. United States,*
    622 F.3d 1358 (Fed. Cir. 2010)..................................................................................................4

*Green v. Mansour,*
    474 U.S. 64 (1985)......................................................................................................................5

*In re Section 301 Cases,*
    570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) ...........................................................................4

*Kingdomware Techs., Inc. v. United States,*
    136 S. Ct. 1969 (2016)............................................................................................................21

*Kisor v. Wilkie,*
    139 S. Ct. 2400 (2019)......................................................................................................25, 26

*Otter Products, LLC v. United States,*
    532 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) ...........................................................14, 15, 16

*Otter Products, LLC v. United States,*
    834 F.3d 1369 (Fed. Cir. 2016)................................................................................................14

*Otter Products, LLC v. United States,*
    70 F. Supp. 3d 1281 (Ct. Int'l Trade 2015) ........................................................14, 15, 21, 22

*Pub. Serv. Comm'n v. Wycoff Co.,*
    344 U.S. 237 (1952)....................................................................................................................5

*SAS Inst. Inc. v. Iancu,*
    138 S. Ct. 1348 (2018)............................................................................................................21

*Shakeproof Indus. Prods. Div. of Ill. Tool Works Inc. v. United States*
    104 F.3d 1309 (Fed. Cir. 1997)..................................................................................................4

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ...........................................................................................5

**Statutes**

5 U.S.C. § 553 .......................................................................................................26

5 U.S.C. § 706 .........................................................................................................4

19 U.S.C. § 1505(b) ..............................................................3, 4, 18, 19, 21, 23

19 U.S.C. § 1505(c) ....................................................................3, 4, 18, 21, 23

19 U.S.C. § 1514(a) ........................................................................................14, 22

19 U.S.C. § 1520(a)(3) .......................................................................3, 19, 21, 23

19 U.S.C. § 1592(c)(4)(B) ..........................................................................4, 9, 24, 25

19 U.S.C. § 1592(c)(4) ..................................................................................5, 7, 9, 25

28 U.S.C. § 1581(i) ..............................................................................................3, 4

28 U.S.C. § 2201(a) ..............................................................................................5

Customs Modernization Act of 1993,
   Pub. L. No. 103-182, 107 Stat. 2057 .........................................................26, 27

**Code of Federal Regulations**

19 C.F.R. § 24.36 ........................................................................4, 18, 19, 21

19 C.F.R. § 152.103(d) ..........................................................................................7

19 C.F.R. § 162.74 ........................................................................................5, 7, 9

19 C.F.R. § 176.31(b) ..........................................................................................4

**Other Authorities**

U.S. CONST. art. I, § 8 ..........................................................................................3

U.S. Ct. Int'l Trade R. 56.1 ..................................................................................4

U.S.  Ct. Int'l Trade R. 57 ....................................................................................5

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

## I.     INTRODUCTION

This case presents a critical question: whether the U.S. Customs and Border Protection ("CBP") may collect duties on imports pursuant to an agency's erroneous misclassification of imports and refuse to refund the interest accrued on the erroneous duty overpayments, thereby penalizing Otter for complying with Customs laws while simultaneously unjustly enriching itself.

For nearly a decade, Defendants' actions have transgressed the statutory limits carefully enacted by Congress.  In 2010, CBP began erroneously reclassifying Otter's Commuter Series® and Defender Series® products from the Harmonized Tariff Schedule of the United States ("HTSUS") heading 3926 to heading 4202, increasing the duty rate from 5.3 percent to 20 percent *ad valorem*.  As Otter discovered inconsistencies in its own compliance with Customs requirements, and to avoid penalties, it submitted the three prior disclosures at issue here – together with duty payments based on CBP's reclassification of its entries.

In 2013, Otter initiated litigation before this Court, which overruled CBP's erroneous classification.  Undeterred, CBP appealed this Court's decision to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), which unanimously affirmed this Court's decision in 2016. After the Federal Circuit's affirmance, CBP requested this Court's clarification in 2017 as to its opinion and judgment with respect to assists.  CBP recognized from the Court's ruling that it was ordered to refund the entire transaction value, including the value of assists paid subsequent to importation.  After a series of delays, CBP finally refunded Otter's duty overpayments on the three prior disclosures in 2020—but refused, and continues to refuse, to refund the interest accrued on those duty overpayments between the date of payment and the date CBP refunded the principal.

Otter initiated this action to ensure it is accorded full relief.  As detailed below, there is no dispute that CBP was well aware of Otter's classification litigation and that Otter's duty overpayments submitted to perfect its prior disclosures were involuntary.  On the law,

1

notwithstanding numerous requests, Defendants have refused to provide any legal authority supporting their actions and have undermined any notion of Government transparency or fair notice.  On the facts, Defendants cannot dispute that Otter made, and CBP collected, duty overpayments pursuant to CBP's erroneous misclassifications.  Taken together, Defendants' delay in refunding the principal of Otter's duty overpayments and failure to refund interest accrued in the meanwhile are contrary to law, contrary to any notion of equity, and arbitrary and capricious.  Considering this Court's rulings (as upheld by the Federal Circuit), allowing Defendants' actions to stand would result in an erroneous and unjust outcome and provide the Government with the unfettered authority to profit through whatever means it chooses at Otter's expense.  Otter respectfully requests that this Court grant this motion and enter judgment in its favor as supported by law and in equity.[1]

## II.    ADMINISTRATIVE DETERMINATIONS UNDER REVIEW

1.    Otter challenges Defendants' delay, refusal, and failure to refund all applicable interest accrued on duty overpayments resulting from CBP's erroneous classification of Otter's imports of the subject merchandise.

## III.    ISSUE PRESENTED

1.    Whether Defendants' failure to refund interest accrued on duty overpayments, from the date of payment to the date of refund of the principal, collected by CBP via prior disclosures pursuant to CBP's erroneous classification of imports, is unlawful.

---

[1] The administrative records filed by CBP in this litigation designate certain information as confidential, citing it as Otter's business proprietary information.  Upon reviewing the confidential administrative records, Otter believes some of this information can be made public.  Otter designates information from the confidential administrative records for which it requests continued confidential treatment using brackets ([ ]), and redacts this information from the public version.

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

## IV. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1581(i)(1), which grants the Court "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for…(A) revenue from imports or tonnage; {or} (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." The parties do not dispute jurisdiction. *See* Pl.'s Compl., Feb. 1, 2022, ECF No. 2, at 3 ¶ 7; Defs.' Answer, June 23, 2022, ECF No. 15, at 3 ¶ 7 ("{A}dmits that the Court has jurisdiction pursuant to 28 U.S.C. 1581(i)(1)…").

## V. LEGAL FRAMEWORK & STANDARDS

The U.S. Constitution grants Congress certain enumerated powers, including the power to "lay and collect Taxes, Duties, Imposts and Excises," as well as to "regulate Commerce with foreign Nations." U.S. CONST. art. I, § 8. Congress delegated authority to the Executive Branch, namely the Secretary of the Treasury and CBP, to exercise delegated authority within specific statutory constraints.

Title 19 of the U.S. Code authorizes "{t}he Secretary of the Treasury to refund duties or other receipts" in certain cases, including "{w}henever money has been deposited in the Treasury on account of a fine, penalty, or forfeiture which did not accrue, or which is finally determined to have accrued in an amount less than that so deposited, or which is mitigated to an amount less than that so deposited or is remitted." 19 U.S.C. § 1520(a)(3).

The statutory provisions of Title 19 of the U.S. Code do not authorize Defendants to withhold interest on duty overpayments made pursuant to a prior disclosure. In fact, the unambiguous statutory provisions mandate that Defendants "***shall***…refund any excess moneys deposited, together with interest thereon," and "{i}nterest on excess moneys deposited {with the agency} ***shall*** accrue…from the date the importer of record deposits estimated duties, fees, and

3

interest…to the date of liquidation or reliquidation of the applicable entry or reconciliation."  19 U.S.C. § 1505(b), (c) (emphasis added).  Furthermore, the statutory provisions of Title 19 of the U.S. Code governing prior disclosures unambiguously specifies the "maximum penalties" and mandates that "any monetary penalty assessed under subsection (c) ***shall not exceed***…if such violation resulted from negligence…the interest…on the amount of lawful duties, taxes, and fees{.}"  19 U.S.C. § 1592(c)(4)(B) (emphasis added).

Pursuant to Congress' unambiguous enabling statutes, CBP's implementing regulations direct the agency to refund those excess moneys with interest on entries liquidated or reliquidated in the normal course.  19 C.F.R. § 24.36.  CBP's implementing regulations also provide that "an entry covering merchandise which is the subject of a decision of the Court of Appeals for the Federal Circuit ***shall*** be reliquidated at the expiration of 90 days from the date of entry of decision by that court and only upon receipt of the judgment order from the U.S. Court of International Trade."  19 C.F.R. § 176.31(b) (emphasis added).

## A.      Standard of Review

Because this case arises "under 28 U.S.C. § 1581(i), the court applies the standard of review set forth in the APA."  *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1323-4, 1329 (Ct. Int'l Trade 2022); *Shakeproof Indus. Prods. Div. of Ill. Tool Works Inc. v. United States*, 104 F.3d 1309, 1313 (Fed. Cir. 1997).  Under the APA standard, this Court must ''hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.''  *In re Section 301 Cases*, 570 F. Supp. at 1329 (citing and quoting *Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1363 (Fed. Cir. 2010); 5 U.S.C. § 706).  This Court may grant judgment on the agency record if, after reviewing the issues of law in conjunction with the record, the Court concludes that the Government violated the APA standard. *Id.* (citing U.S. Ct. Int'l Trade R. 56.1).

### B.     Declaratory Judgment

The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *Canadian Wheat Bd. v. United States*, 637 F. Supp. 2d 1329, 1219 (Ct. Int'l Trade 2009) ("The authority to grant a declaratory judgment is found in the Declaratory Judgment Act, (28 U.S.C. § 2201(a)), and the rules of this Court.") (citing 28 U.S.C. § 2201(a); U.S. Ct. Int'l Trade R. 57; *Pub. Serv. Comm'n v. Wycoff Co*., 344 U.S. 237, 241, 243, 73 S. Ct. 236, 97 L. Ed. 291 (1952); *Wilton v. Seven Falls Co*., 515 U.S. 277, 288, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."); *Green v. Mansour*, 474 U.S. 64, 72, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)).

## VI.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Pre-Litigation History

#### 1.     First Prior Disclosure – Assists (Anchorage)

On November 17, 2010, Otter filed a prior disclosure letter with the port of Anchorage, Alaska pursuant to 19 U.S.C. § 1592(c)(4) and 19 C.F.R. § 162.74, concerning duty underpayments on certain assists of finished durable protective covers.  *See* Otter Nov. 17th Prior Disclosure Ltr. from P.Hall to Comm'r of Customs (Nov. 17, 2010) (AK CONF 000027-29); *see also* CBP Mem. (Apr. 24, 2019) (AK CONF 000014).

On February 17, 2011, Otter perfected the prior disclosure, calculating the duties associated with the assists and submitting a duty payment covering the time period through December 31,

2010.  *See* Ltr. from P.Hall to Comm'r of Customs (Feb. 17, 2011) (AK CONF 000031-34).[2]  On March 23, 2011, Otter sent a letter to CBP proposing that Otter submit quarterly duty payments on assists for the time period beginning on January 1, 2011.  *See* Ltr. from P.Hall to P.Pierson (Mar. 23, 2011) (AK CONF 000132-134).  Following a telephone conference on March 28, 2011, however, and at the direction of CBP, Otter submitted an application to participate in the reconciliation prototype to CBP Headquarters on September 26, 2011 to make periodic post-entry duty payments on assists because CBP informed Otter that Anchorage Customs was not approved for reconciliation entries.  *See* Ltr. from P.Hall to P.Pierson (Sept. 29, 2011) (AK CONF 000136-8).  On September 29, 2011, Otter submitted its first interim duty payment on assists covering the time period January 21, 2011 to August 31, 2011 and notified CBP that, pending approval of its reconciliation application, Otter intended to submit interim duty payments on the assists associated with its imports to Anchorage Customs.  *See* Ltr. from P.Hall to P.Pierson (Sept. 29, 2011) (AK CONF 000136-8).  On May 7, 2012, Otter submitted a second interim duty payment on assists covering the time period through December 31, 2011, pending Otter's initiation of flagging entries for value reconciliation.  *See* Ltr. from P. Hall to P. Pierson (May 7, 2012) (AK CONF 000143-7).  On July 30, 2012, Otter submitted a third and final interim duty payment on assists covering the time period January 1, 2012 through May 2, 2012 because CBP approved Otter's reconciliation application and Otter began flagging entries for value reconciliation on May 3, 2012.  *See* Ltr. from P.Hall to P.Pierson (July 30, 2012) (AK CONF 000149-153).

---

[2] Otter's February 17, 2011 prior disclosure letter was addressed to Mr. Patrick McGownd, Anchorage FP&F Officer and also cc'd Ms. Pamela Pierson, Anchorage Import Specialist. *See id.* ("We are sending copies of this letter and its attachments to Customs Import Specialist Pamela Pierson at Anchorage Customs.").

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

In all, between February 17, 2011 and July 30, 2012, Otter submitted the following duty payments

on assists for entries covered by the November 17, 2010 prior disclosure to CBP, paid to the order

of the U.S. Department of the Treasury:

| Check No. | Check Date | Check Amount | CBP Collection Date (Form 368) | CBP Processing Date | Payment Description |
|---|---|---|---|---|---|
| 13919 | 02/15/2011 | [          ] | 02/18/2011 | 02/22/2011 | Initial Prior Disclosure (through 12/31/2010) |
| 17162 | 09/26/2011 | [          ] | 09/30/2011 | 09/30/2011 | First Interim Payment (01/21/2011 through 08/31/2011) |
| 20967 | 05/04/2012 | [          ] | 05/07/2012 | 05/09/2012 | Second Interim Payment (through 12/31/2011) |
| 22538 | 07/27/2012 | [          ] | 07/31/2012 | 08/01/2012 | Third Interim Payment (01/01/2012 through 05/02/2012) |

*Id*; *see also* CBP Budget Clearing Account & Suspense Item Report (AK CONF 000223-5);

Refund Request Ltr. from P.Hall to P.Pierson (Nov. 23, 2016) (AK CONF 000129-130)

(requesting duty overpayment refund with applicable interest).  Otter's prior disclosure and interim

payments calculated the duties initially underpaid resulting from the valuation errors pursuant to

CBP's erroneous classification of the entered products under HTSUS subheading 4202.99.0000,

with a duty rate of 20 percent *ad valorem*.  *See* Ltr. from P.Hall to Comm'r of Customs (Feb. 17,

2011) (AK CONF 000032) ("OtterBox calculated the value of the assists and apportioned their

value in accordance with the methods set forth in 19 C.F.R. 152.103(d), and generally accepted

accounting principles.").

## 2.    Second Prior Disclosure – Clerical Errors (Anchorage)

On May 16, 2012, Otter filed a prior disclosure letter with the port of Anchorage, Alaska

pursuant to 19 U.S.C § 1592(c)(4) and 19 C.F.R. § 162.74, concerning certain clerical errors,

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

including classification and valuation errors, which resulted in both duty underpayments and duty overpayments on durable protective covers and requested offset of the underpayments by the overpayments. *See* Otter May 16, 2012 Prior Disclosure Ltr. from P.Hall to Comm'r of Customs (May 16, 2012) (AK CONF 002992-7)[3]; *see also* Refund Request Ltr. from P.Hall to P.McGownd (Nov. 23, 2016) (AK CONF 002989-2990) (requesting duty overpayment refund with applicable interest).[4]  The clerical errors included:

> (1) classification of its finished cases under the classification CBP deemed correct at that time;
> (2) classification of certain component parts of cases under the classification CBP deemed correct at the time;
> (3) mistranscription of invoice values onto CBP Form 7501;
> (4) incorrect invoice prices.

*Id.*  Otter's May 16, 2012 prior disclosure letter also informed CBP that Otter had filed formal protests challenging CBP's erroneous classification, which could impact the duty rate of certain cases subject to the prior disclosure:

> Beginning on June 28, 2011, OtterBox has filed, with CBP, a series of formal Protests (CBP Forms 19) challenging the classification of certain imported cases under subheading 4202.99.9000, HTSUS, at the 20% duty rate and claiming that the proper classification of those cases is under subheading 3926.90.9980, HTSUS, at the 5.3% duty rate. Three of these Protests are currently at CBP Headquarters for further review. The ultimate decision of CBP Headquarters will be a binding written ruling, which may result in at least some of the cases that are the subject of this prior disclosure having been entered at the correct duty rate.

*See* Otter May 16, 2012 Prior Disclosure Ltr. at n.2 (AK CONF 002993).

---

[3] Otter's May 16, 2012 prior disclosure letter was addressed to Mr. Patrick McGownd, Anchorage FP&F Officer and also cc'd Monty Fulton, Memphis FP&F Officer; Paul Lorelli, Los Angeles/Long Beach Seaport FP&F Officer; Liza Lopez, Laredo FP&F Officer; and Joe Halbeisen, Denver FP&F Officer. *See id.*

[4] Otter's November 23, 2016 refund request letter was addressed to Mr. Patrick McGownd, Anchorage FP&F Officer and also cc'd Mr. Peter Crosby, Paralegal-FOIA Officer. *See id.*

On July 9, 2012, Otter perfected the prior disclosure and submitted payment of duties initially underpaid resulting from clerical errors for entries covered by its prior disclosure:

| Check No. | Check Date | Check Amount | CBP Collection Date (Form 368) | CBP Processing Date | Payment Description |
|---|---|---|---|---|---|
| 22080 | 07/05/2012 | [            ] | 07/10/2012 | 07/10/2012 | Prior Disclosure Payment |

*See* Otter July 9, 2012 Prior Disclosure Ltr. from P.Hall to Comm'r of Customs (July 9, 2012) (AK CONF 002999-3005)[5]; *see also* July 5, 2012 Check No. 22080 to U.S. Dept. of the Treasury (AK CONF 003006).  As with its initial prior disclosure letter, Otter's July 9, 2012 prior disclosure letter again informed CBP that Otter had filed formal protests challenging CBP's classification, which could impact the duty rate of certain cases subject to the prior disclosure.  *See* Otter July 9, 2012 Prior Disclosure Ltr. at n.1 (AK CONF 003001).  Otter calculated the underpaid duties and overpaid duties resulting from these four clerical errors pursuant to CBP's erroneous classification of the entered products under HTSUS subheading 4202.99.0000, with a duty rate of 20 percent *ad valorem*.  *Id.*

### 3.    Third Prior Disclosure – Assists (Long Beach)

On May 13, 2013, TreeFrog Developments, Inc. d/b/a LifeProof ("LifeProof") filed a prior disclosure letter with the port of Long Beach, California pursuant to 19 U.S.C. § 1592(c)(4) and 19 C.F.R. § 162.74, concerning duty underpayments on assists for finished durable protective covers.  *See* LifeProof Prior Disclosure Ltr. from W.Sjoberg to Comm'r of Customs (May 13,

---

[5] Otter's July 9, 2012 prior disclosure letter was addressed to Patrick McGownd, Anchorage FP&F Officer and also cc'd Monty Fulton, Memphis FP&F Officer; Paul Lorelli, Los Angeles/Long Beach Seaport FP&F Officer; Liza Lopez, Laredo FP&F Officer; Joe Halbeisen, Denver FP&F Officer; Russell Holsopple, San Francisco FP&F Officer; Craig Mabie, Seattle FP&F Officer; and Tessie Douglass, Indianapolis c/o Cleveland FP&F Officer.  *See id.*

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

2013) (LB CONF 000041-6); *see also* Refund Request Ltr. from P.Hall to R.Thierry (Nov. 23, 2016) (LB CONF 000037-39).[6]

On May 14, 2013, LifeProof perfected the prior disclosure and submitted payment for duties underpaid associated with its prior disclosure.  *See* LifeProof Ltr. from W.Sjoberg to Comm'r of Customs (May 14, 2013) (LB CONF 000095).

On June 3, 2013, LifeProof amended this prior disclosure because an Otter sister company purchased LifeProof and, as a result, Otter became the importer of record for LifeProof's already-entered and prospective imports.  *See* LifeProof Ltr. from W.Sjobergt to Comm'r of Customs (June 3, 2013) (LB CONF 000092-93); *see also* CBP Mem. (LB CONF 000458) ("LifeProof started importing under the Otter Products LLC Importer of Record Number in 2014, which is why some prior disclosure tenders were made by LifeProof and some were made by Otter Products, LLC."). On September 11, 2013, LifeProof and Otter jointly submitted their first duty interim payment for assists provided to LifeProof and OtterBox covering the time periods of May 2013 to August 2013 (tools/molds) and January 2013 to August 2013 (engineering/design), utilizing the same methodology for calculating LifeProof's May 13, 2013 prior disclosure initial payment.  *See* LifeProof & Otter Ltr. from W.Sjoberg to Comm'r of Customs (Sept. 11, 2013) (LB CONF 000099-100).[7]  As agreed with CBP, LifeProof and Otter notified CBP they would calculate a final payment once LifeProof's entries began entering under OtterBox's importer identification number and flagged as participating in CBP's reconciliation prototype.  *Id.*

---

[6] Otter's November 23, 2016 Refund Request Letter was addressed to Mr. Robert P. Thierry, Long Beach FP&F Officer and also cc'd Mr. Paul Lorelli, Paralegal Specialist.  *See id.*

[7] LifeProof and Otter's September 11, 2013 letter was addressed to Mr. Paul Lorelli, Long Beach FP&F Officer.  *See id.*

On July 29, 2014, LifeProof and Otter jointly submitted a second interim duty payment for assists covering the time period of September 1, 2013 through December 31, 2013 utilizing the same methodology for calculating LifeProof's May 13, 2013 prior disclosure initial payment.  *See* LifeProof & Otter Ltr. from W.Sjoberg to Comm'r of Customs (July 29, 2014) (LB CONF 000121-122).[8]  As agreed with CBP, LifeProof and Otter notified CBP that Otter would pay the remainder of duties covering the time period of January 1, 2014 through April 30, 2014 in September 2014 because LifeProof's entries were being entered under Otter's importer identification number and flagged as participating in CBP's reconciliation prototype.  *Id.*  LifeProof and Otter's July 29, 2014 letter also notified CBP that Otter had a civil action pending before this Court challenging CBP's classification of similar products:

> Please note that Otter has a civil action pending at the U.S. Court of International Trade challenging the HTSUS classification of similar products. *See Otter Products, LLC v. United States*, No. 13-00269 (Ct. Int'l Trade filed Aug. 2, 2013). The ultimate resolution of that civil action could determine the proper future classification of products such as those that are subject to this prior disclosure. By submitting this supplemental payment, Otter does not waive its right to seek reimbursement of overpaid tariff duties on entries or assists.

*Id.*  As agreed with CBP, LifeProof and Otter submitted a third and final interim duty payment on assists covering the time period of January 1, 2014 through April 30, 2014 on September 29, 2014 utilizing the same methodology as the initial payment, the first interim payment, and the second interim payment.  *See* LifeProof & Otter Ltr. from W.Sjoberg to Comm'r of Customs (Sept. 29, 2014) (LB CONF 000145-6).[9]  LifeProof and Otter's September 29, 2014 letter again notified CBP

---

[8] LifeProof and Otter's July 29, 2014 letter was addressed to Mr. Paul Lorelli, Long Beach FP&F Officer.  *See id.*

[9] LifeProof and Otter's September 29, 2014 letter was addressed to Mr. Paul Lorelli, Long Beach FP&F Officer.  *See id.*

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

that the pending action before this Court could impact the proper classification of products subject to the prior disclosure.  *Id.*

In all, between May 14, 2013 and September 29, 2014, LifeProof (and, later, Otter) submitted duty payments on assists for entries covered by this prior disclosure:

| Check No. | Check Date | Check Amount | CBP Collection Date (Form 368) | Payment Description |
|---|---|---|---|---|
| 2226 | 05/13/2013 | [            ] | 05/23/2013 | Initial Prior Disclosure |
| 156 | 09/10/2013 | [            ] | 09/19/2013 | First Interim Payment (May 2013 to Aug. 2013 (tools/molds)) (Jan. 2013 to Aug. 2013 (engineering/design)) |
| 50402 | 07/24/2014 | [            ] | 07/31/2014 | Second Interim Payment (Sept. 1, 2013 to Dec. 31, 2013) |
| 53580 | 09/25/2014 | [            ] | 10/02/2014 | Third Interim Payment (Jan. 1, 2014 to Apr. 30, 2014) |

*See* LifeProof May 14, 2013 Ltr. (LB CONF 000037-9); LifeProof & Otter Sept. 11, 2013 Ltr. (LB CONF 000099-100); LifeProof & Otter July 29, 2014 Ltr. (LB CONF 000121-2); LifeProof & Otter Sept. 29, 2014 Ltr. (LB CONF 000145-6).  LifeProof and Otter calculated the duties initially underpaid as a result of the valuation errors pursuant to CBP's erroneous classification of the entered products under subheading 4202.99.0000, with a duty rate of 20 percent *ad valorem*.  *Id.*

**B.    Classification Litigation**

On August 2, 2013, Otter filed a Summons and Complaint challenging CBP's classification of Otter's Commuter Series® and Defender Series® durable protective covers for smartphones and other electronic devices under 4202.99.00 HTSUS, with a duty rate of 20 percent *ad valorem*. *See* Pl.'s Compl., Feb. 1, 2022, ECF No. 2, at 7 ¶ 22 (citing Summons and Pl.'s Compl., *Otter Products, LLC v. United States*, No. 13-00269, (Ct. Int'l Trade Aug. 2, 2013), ECF Nos. 1, 4).  The Complaint asserted that Otter filed a prior disclosure letter regarding underpayment of duties on

assists of the subject entries on November 17, 2010 and subsequently submitted a series of payments on duties for assists. *Id.* Otter specifically requested in Count II of the Complaint that Defendant "refund to Otter all additional overpayments of duties on assists, with all applicable interest." *Id.*

Otter notified the ports of Anchorage and Long Beach of the pending classification litigation and requested that the three prior disclosures remain open during the pendency of the litigation because the outcome would impact the duties paid under the prior disclosures and preserving its right to seek reimbursement of overpaid duties. *See*, *e.g.*, LifeProof & Otter July 29, 2014 Ltr. (LB CONF 000121-2) ("Please note that Otter has a civil action pending at the U.S. Court of International Trade challenging the HTSUS classification of similar products. *See Otter Products, LLC v. United States*, No. 13-00269 (Ct. Int'l Trade filed Aug. 2, 2013). The ultimate resolution of that civil action could determine the proper future classification of products such as those that are subject to this prior disclosure. By submitting this supplemental payment, Otter does not waive its right to seek reimbursement of overpaid tariff duties on entries or assists."); LifeProof & Otter Sept. 29, 2014 Ltr. (LB CONF 000145-6) (same); Email from P.Hall to P.Lorelli Regarding LifeProof Prior Disclosure (Aug. 12, 2015) (LB PUBLIC 00010) ("We respectfully request you to withhold action on the attached prior disclosure pending a final court decision."). CBP agreed. *See, e.g.*, Email from P.Lorelli to P.Hall Regarding LifeProof Prior Disclosure (Aug. 17, 2015) (LB PUBLIC 000009) ("Due to the information you have provided, we will put this case in a hold status pending the ruling on the CIT appeal."); Email Correspondence from P.Hall to P.Crosby from June 2015 through August 2016 (AK PUBLIC 001370-2) ("As you know, you suspended action on the attached prior disclosure until after a final court decision on the proper

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Harmonized Tariff Schedule of the United States ("HTSUS") classification of the protective cases that are the subject of the disclosure.").

On June 2, 2015, this Court held in favor of Otter, concluding that Otter's durable protective covers were appropriately classified under HTSUS subheading 3926.90.9980, at a duty rate of 5.3 percent *ad valorem*, overruling CBP's erroneous classification under HTSUS heading 4902 with a duty rate of 20 percent *ad valorem*.  *See Otter Products, LLC v. United States*, 70 F. Supp. 3d 1281, 1295-98 (Ct. Int'l Trade 2015).  The Court also found that Otter's interim payments at the higher duty rate made pursuant to the November 17, 2010 prior disclosure were a "charge or extraction" under 19 U.S.C. § 1514(a) that CBP was required to refund.  *Id.* at 1296-98. Specifically, the Court held that "CBP's classification decision related to the duties assessed for the entire transaction value of the goods at the time of entry, which includes the value of any assists." *Id.* at 1296.  Therefore, changes "to classification and the associated rate of duty appl{y} to all duties paid including those paid in the form of an assist." *Id.*  The Court ordered CBP to reliquidate entries of durable protective covers "under HTSUS subheading 3926.90.9980 at the lower duty rate of 5.3% and to refund all duties overpaid, plus interest, as provided by law." *See Otter Products, LLC v. United States*, 532 F. Supp. 3d 1345, 1348 (Ct. Int'l Trade 2021) (citing *Otter Products, LLC v. United States*, 70 F. Supp. 3d 1281, 1295-98 (Ct. Int'l Trade 2015); Judgment of May 26, 2015).

On August 25, 2016, following appeal by the Government, the Federal Circuit unanimously affirmed this Court's opinion with respect to the classification of Otter's durable protection covers under HTSUS subheading 3926.90.9980.  *See Otter Products, LLC v. United States*, 834 F.3d 1369 (Fed. Cir. 2016).

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

On February 1, 2017, this Court denied Defendants' Motion for Clarification filed on

January 12, 2017 regarding this Court's Judgment entered on June 2, 2015 reasoning:

> The court's opinion speaks for itself on the issue of whether the judgment requires a refund of overpayment of duties associated with post-entry tenders. The court clearly determined that 'the ad valorem rate of 5.3% applies to the entire transaction value of Otter's entries, including the value of assists paid subsequent to importation….' Further, Defendant recognized that the court ordered refunds pertaining to the entire transaction value, including the value of assists paid subsequent to importation. Otter Products, LLC v. United States, 38 CIT at __, 70 F. Supp. 3d at 1284. Further, Defendant recognized that the court ordered refunds pertaining to the entire transaction value, including the value of assists paid subsequent to importation. Teleconference 03:15-03:37. The court suggested, and the parties agreed, that Plaintiff either had already or would cooperate to exchange all necessary disaggregated information to calculate the assists associated with Plaintiff's entries and to ensure that Defendant can compute the proper sum to be refunded to comply with the judgment. Id. at 12:19-13:34.

See Otter Products, LLC v. United States, Court No. 13-00269, Mem. and Order, Feb. 1, 2017 (AK

PUBLIC 001843-5); see also Otter Products, LLC v. United States, 532 F. Supp. 3d 1345, 1348

(Ct. Int'l Trade 2021) (citations omitted).

### C.     CBP's Refund of Duty Overpayments Without Interest

On November 23, 2016, Otter submitted letters for each of the three prior disclosures to

the ports of Anchorage and Long Beach modifying each prior disclosure, respectively, and

requesting a partial refund of its duty overpayments submitted in connection with each prior

disclosure, with applicable interest. See Refund Request Ltr. from P.Hall to P.Pierson (Nov. 23,

2016) (AK CONF 000129-130) (requesting duty overpayment refund with applicable interest);

Refund Request Ltr. from P.Hall to P.McGownd (Nov. 23, 2016) (AK CONF 002989-2990)

(requesting duty overpayment refund with applicable interest); Refund Request Ltr. from P.Hall

to R.Thierry and cc'ing P.Lorelli (Nov. 23, 2016) (LB CONF 000037-39) (modifying prior

disclosure and requesting duty overpayment refund with applicable interest); see also Otter E-mail

from P.Hall to P.Crosby Regarding Modification & Refund (Nov. 23, 2016) (AK PUBLIC

001657) (attaching refund letter requests, AK CONF 002989; AK CONF 003103). In each letter, Otter recalculated the duty overpayments for each prior disclosure, classifying the merchandise at issue under HTSUS subheading 3926.90.9980, at a duty rate of 5.3 percent *ad valorem*, consistent with this Court's and the Federal Circuit's holdings; stated its calculation of the overpayment of the revenue calculation resulting from CBP's erroneous classification of the merchandise at issue under HTSUS heading 4902 with a duty rate of 20 percent *ad valorem*; and respectfully requested that CBP refund the overpaid amount with interest. *Id.* Otter further calculated the interest on the overpayment of the loss of revenue based on a midpoint method. *Id.*

Thereafter, CBP began working cooperatively with Otter to comply with this Court's order that the agency "refund {to Otter} all duties overpaid, plus interest, as provided by law." *See Otter Products, LLC v. United States*, 532 F. Supp. 3d 1345, 1348 (Ct. Int'l Trade 2021). Specifically, CBP's Director for the Chicago Center for Excellence, Ms. Linda Golf, requested that the protocol for refunds of overpaid duties would first be undertaken for the numerous protested entries, and once all such overpayments were completed, refunds would be undertaken for the prior disclosures. *See* CBP Email from P.Crosby to P.Hall (May 4, 2017) (AK PUBLIC 001162) ("Unfortunately, the time will be available because we also learned that ***CEE has determined that all of the protested entries will be processed before any action is taken on the prior disclosure aspect.***") (emphasis added). Otter agreed to that protocol, operating under the assumption that all interest would accrue and be paid, during which CBP's refund process for the numerous protested entries took three years (*i.e.*, 2017 to 2020). *See* Email from S.Pfuetze to L.Golf (Nov. 6, 2018) (AK PUBLIC 001157) (attaching spreadsheet recalculations, AK CONF 002489-92).

On December 8, 2016, CBP internal communications recognized Otter's Long Beach prior disclosure was deemed valid, that there was no basis to reject it, and that CBP had received the

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

four payments in connection with Otter's prior disclosure.  *See* CBP E-mail from P.Lorelli to R.Griffin & J.Watkins (Dec. 8, 2016) (LB PUBLIC 000032).

On May 4, 2017, CBP notified Otter that CBP had undertaken an internal reorganization; that "{d}ue to this reorganization we were deeply in the dark regarding the final Order of the CIT," and so calculating and refunding Otter's duty overpayments would take additional time; but that "***with respect to the Otter prior disclosure(s)…{t}he only ray of sunshine is that interest will continue to accrue.***"  *See* CBP E-mail from P.Crosby to P.Hall (May 4, 2017) (AK PUBLIC 001162-3) (emphases added).  CBP also recognized that "clearly this is not going to be resolved as quickly as we both believed after the CIT Order of February."  *Id.*

On March 29 and 30, 2018, CBP requested information associated with the Anchorage and Long Beach prior disclosures from Otter, including "copies of receipts for the tenders that were made," because information for "a few pre-CEE prior disclosures" had "***literally disappeared***" with the exception of the FP&F responsibility.  *See* CBP E-mails from P.Crosby to P.Hall (Mar. 29-30, 2018) (AK PUBLIC 001393) (emphasis added).

In 2020, CBP accepted all three revised prior disclosures, determined in the process that it was appropriate to classify the products subject to those prior disclosures under HTSUS subheading 3926.90.9980, at a duty rate of 5.3 percent *ad valorem*, consistent with this Court's and the Federal Circuit's holdings.  With regard to Otter's November 17, 2010 Anchorage prior disclosure and February 17, 2011 tender in the amount of [          ], CBP accepted the prior disclosure and proposed a level of culpability as "Negligence" on June 1, 2020.  *See* CBP Mem. (June 1, 2020) (AK CONF 000002); CBP Mem. Ex. A, Pre-Penalty Statement (AK CONF 000004-7).  CBP also accepted Otter's May 16, 2012 Anchorage prior disclosure and tenders, proposing a level of culpability as "Negligence" on June 1, 2020.  *See* CBP Mem. (June 1, 2020) (AK CONF

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

000106); *see also* CBP Mem. Ex. A, Pre-Penalty Statement (AK CONF 000107-8). Finally, on July 13, 2020, CBP accepted Otter's May 16, 2013 Long Beach prior disclosure and tenders, proposing a level of culpability as "Negligence" on July 13, 2020. *See* CBP Mem. (July 13, 2020) (LB CONF 000247); *see also* CBP Mem. Ex. A., Pre-Penalty Statement (LB CONF 000248-9).

In September 2020, CBP refunded Otter's duty overpayments pursuant to the three prior disclosures without interest. *See* CBP Anchorage Close-Out Ltr. (AK CONF 001767-8); *see also* CBP LifeProof Close-Out Ltr. (Sept. 17, 2020) (LB CONF 000887). Specifically, CBP did not refund those overpayments with interest accumulated over the six to nine years between the date of Otter's payments (the earliest of which was made on February 17, 2011) and September 29, 2020 (the date of the refund). *Id.*

Following several Otter requests for explanation by CBP regarding the agency's refusal to refund interest accrued on Otter's prior disclosure duty overpayments,[10] CBP recognized on October 10, 2020, that "{s}tatutory law requires overpayment of duties to be refunded with interest when an entry is liquidated or reliquidated. 19 U.S.C. 1505(b) & (c); *see also* 19 C.F.R. 24.36. CBP, therefore, ties interest to the liquidation or reliquidation of an entry (regular or reconciliation)." *See* Email from B.Farrell to L.Mastriani (AK PUBLIC 000455). However, according to CBP:

---

[10] *See generally* E-mail Correspondence between CBP and Otter (AK PUBLIC 000098-000104; AK PUBLIC 000305-312; AK PUBLIC 000346-355).

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

With respect to prior disclosures, a different mechanism is in effect. The deposits of a prior disclosure are placed into a holding account until the prior disclosure is closed. If there is an overpayment of a prior disclosure, at the time the prior disclosure is closed, the overpayment would be refunded. However, a prior disclosure is not the subject of a liquidation or a reliquidation, just a review and closure with funds disbursed to Customs or refunded to the importer or some combination of disbursement and refund. Because section 1505 deals only with interest tied to liquidations and reliquidations, section 1505 is inapplicable to prior disclosures. ***There is no provision in the statute or the regulations that calls for the assessment of interest on refunds associated with prior disclosures.***

*Id.* (emphasis added).

On February 1, 2022, Otter filed the instant Summons and Complaint.  *See* Summons, Feb. 1, 2022, ECF No. 1; Pls.'s Compl., Feb. 1, 2022, ECF No. 2.  On June 23, 2022, the Defendants filed their answer and subsequently filed public and confidential versions of the administrative record for Long Beach and Anchorage on July 1 and July 2, 2022, respectively.  *See* Defs.' Answer, June 23, 2022, ECF No. 15; Anchorage Public Admin. Record, July 1, 2022, ECF No. 21; Long Beach Public Admin. Record, July 1, 2022, ECF No. 22; Anchorage Conf. Admin. Record, July 1, 2022, ECF No. 24; Long Beach Conf. Admin. Record, July 2, 2022, ECF. No. 25.

## VII.    SUMMARY OF THE ARGUMENT

Otter is entitled to interest accrued on the refunds of duty overpayments that Otter made in connection with its prior disclosures.  Defendants' actions are contrary to law, in excess of statutory authority, arbitrary, capricious, and contrary to equity.

*First*, Otter's interim payments of duties on assists were payments of additional duties on consumption entries made prior to Otter's participation in the Reconciliation Prototype. 19 U.S.C. § 1505(b); 19 C.F.R. § 24.36.  Otter should be entitled to interest on all other overpayments of duties in connection with its prior disclosures from the date of payment to the date of refund pursuant to 19 U.S.C. § 1520(a)(3).  When Otter filed the prior disclosures and made the payments in connection with them, Otter advised the FP&F Officers at the Ports of Anchorage and Los

Angeles/Long Beach that Otter had filed an action before this Court that could affect the amount of loss of revenue.  After Otter received a favorable decision from this Court, and again after a favorable decision from the U.S. Court of Appeals for the Federal Circuit, Otter sent letters to the FP&F Officers advising them about the court decisions and requesting modifications to the prior disclosures resulting in refunds of duty overpayments.  Thus, Defendants were aware that the full amounts of duty payments were never voluntary.  Otter is thus entitled to a refund of interest accrued on the duty overpayments made in connection with its prior disclosures.

*Second*, Defendants' actions and justifications are unlawful, arbitrary, capricious, and in excess of statutory authority.  Defendants posit that there is no statutory or regulatory provision that calls for the refund of interest on refunds associated with prior disclosures, yet ignore Congress' unambiguous, nondiscretionary statutory mandate for maximum penalties applicable to prior disclosures involving negligent conduct.  Defendants' failure to refund interest accrued on overpaid prior disclosures payments would result in penalizing Otter to a greater extent than contemplated by law.

*Third*, Defendants' unlawful actions should not go unchecked as matter of law and equity. Defendants have unjustly benefitted monetarily from its misclassification of Otter's entries.  Over a decade later, Otter continues to expend attorney's fees through this action to obtain the full relief of CBP's misclassification.

## VIII.   ARGUMENT

The Court should grant judgment in favor of Otter on the agency record and declare Defendants' failure to refund Otter's duty overpayments with interest was contrary to law, arbitrary, and capricious, and order Defendants to refund the interest unlawfully withheld.

A.      **Defendants' Governing Statutes Authorize And Require Refunds On Duty Overpayments With Interest**

Defendants' governing statutes unambiguously authorize the Secretary of the Treasury to refund duties or other receipts "{w}henever money has been deposited in the Treasury on account of a fine, penalty, or forfeiture which did not accrue, or which is finally determined to have accrued in an amount less than that so deposited, or which is mitigated to an amount less than that so deposited or is remitted."  19 U.S.C. § 1520(a)(3).  Defendants' governing statutes also impose a non-discretionary duty, requiring that Defendants "***shall***…refund any excess moneys deposited, together with interest thereon" whereby "{i}nterest on excess moneys deposited {with the agency} ***shall*** accrue…from the date the importer of record deposits estimated duties, fees, and interest…to the date of liquidation or reliquidation of the applicable entry or reconciliation."  19 U.S.C. § 1505(b), (c) (emphasis added); *see also* 19 C.F.R. § 24.36.  Because "{t}he authoritative statement is the statutory text, not the legislative history or any other extrinsic material," this Court should enforce to the words Congress enacted and nondiscretionary duties Congress imposed upon Defendants.  *See Gilead Scis., Inc. v. Lee*, 778 F.3d 1341, 1348 (Fed. Cir. 2015); *see also SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (finding that the word "shall" means "must" because it "generally imposes a nondiscretionary duty"); *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.").  Here, the agency record unequivocally demonstrates Otter made interim duty payments on assists covered by its three prior disclosures (before Otter's participation in CBP's Reconciliation Prototype) pursuant to CBP's erroneous classification.  Thus, Otter should be entitled to interest on the overpayments because they were made involuntarily.  *See Otter Products, LLC v. United States*, 70 F. Supp. 3d 1281, 1296-8 (Ct. Int'l

Trade 2015); *accord American Motorists Ins. Co. v. United States*, 8 F. Supp. 2d 874 (Ct. Int'l Trade 1998).

This Court has already found that payments pursuant to a prior disclosure can be involuntary and rejected Defendants' argument "that OtterBox's tender of duties (i.e., interim payments) on assists were voluntary, not a 'charge or exaction' under 19 U.S.C. § 1514(a)" because "a protest as to classification and the associated rate of duty *applies to all duties paid including those paid in the form of an assist*." *Otter Products*, 70 F. Supp. 3d at 1297 (emphasis added). The Court found that "OtterBox protested the classification of its merchandise" and "does not seek the return of monies voluntarily tendered, rather it seeks a refund resulting from an incorrect classification{.}" *Id.* at 1297. Indeed, Defendants were aware at all times that Otter's full amounts of the payments were never voluntary and made pursuant to CBP's erroneous misclassification. Otter notified CBP as such on numerous occasions during the pendency of the underlying litigation, requesting that CBP withhold taking actions on the prior disclosures and reserving its rights to seek reimbursement because the outcome of the litigation could impact the classification of Otter's products—CBP agreed. *See* LifeProof & Otter July 29, 2014 Ltr. (LB CONF 000121-2); LifeProof & Otter Sept. 29, 2014 Ltr. (LB CONF 000145-6); Email from P.Hall to P.Lorelli Regarding LifeProof Prior Disclosure (Aug. 12, 2015) (LB CONF 000009); Email from P.Lorelli to P.Hall Regarding LifeProof Prior Disclosure (Aug. 17, 2015) (LB CONF 000009); Email Correspondence from P.Hall to P.Crosby from June 2015 through August 2016 (AK PUBLIC 001370-2).

Further, this Court's prior findings that CBP's classification was erroneous after "OtterBox paid duties in light of the classification of its merchandise" and "protested classification" fits squarely with the instant facts. *Otter Products*, 70 F. Supp. 3d at 1297. On one hand, Defendants

acknowledges that "{s}tatutory law requires overpayment of duties to be refunded with interest when an entry is liquidated or reliquidated," yet on the other, posits that "{t}here is no provision in the statute or regulations that calls for the assessment of interest on refunds associated with prior disclosures." *See* Email from B.Farrell to L.Mastriani (Oct. 10, 2020) (AK PUBLIC 000455). However, Defendants have no legal or factual basis for withholding interest on overpayments made pursuant to CBP's erroneous misclassification where no such payment is or was ever due. *Accord American Motorists Ins. Co. v. United States*, 8 F. Supp. 2d 874 (Ct. Int'l Trade 1998) ("An 'exaction' is a 'wrongful demand for payment under color of official authority, where no payment is due{.}") (citations omitted). To the contrary, CBP's governing statutes unambiguously require CBP to refund excess monies deposited with interest whenever such fine, penalty, or forfeiture did not accrue. *See* 19 U.S.C. §§ 1520(a)(3), 1505(b), (c).

Additionally, when Otter filed the prior disclosures and made the payments in connection with them, Otter advised the FP&F Officers at the Ports of Anchorage and Los Angeles/Long Beach that Otter had filed an action before this Court that could affect the amount of loss of revenue. After Otter received a favorable decision from this Court, and again after a favorable decision from the Federal Circuit, Otter sent letters to the FP&F Officers advising them about the court decisions and requesting modifications to the prior disclosures resulting in refunds of duty overpayments. Defendants knew and understood that the overpayments were not due, and in fact, communicated to Otter that interest would continue to accrue. *See* CBP E-mail from P.Crosby to P.Hall (May 4, 2017) (AK PUBLIC 001162-3) ("with respect to the Otter prior disclosure(s)…{t}he only ray of sunshine is that interest will continue to accrue").

In effect, CBP's erroneous misclassification operating under the guise of prior disclosures placed Otter in a Hobson's choice: (1) risk penalties for failing to submit a prior disclosure pursuant

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

to CBP's erroneous classification; or (2) risk having a prior disclosure rejected by going against CBP's erroneous classification when submitting the prior disclosure, all while CBP reaps the benefits of Otter's duty overpayments.  Indeed, Otter's prior disclosures and tenders were not voluntary because CBP's position on refunds means that a party contemplating a prior disclosure on any issue when disagreeing with CBP on another faces the impossible choice of either risking penalties or loss of revenue should CBP decline to refund any interest on duty overpayments.  *See American Motorists*, 8 F. Supp. at 877 ("Any further attempt {for Customs to demand payment of additional duties} was merely a 'wrongful demand for payment under color of official authority, where no payment {was} due.") (citations omitted).  Accordingly, there is no legal or factual basis for treating excess monies deposited with CBP through a prior disclosure, and pursuant to CBP's erroneous misclassification, differently from any other excess monies.

### B. Defendants' Prior Disclosure Governing Statutes Limit Maximum Penalties For Lawful Duty Overpayments And Do Not Authorize Withholding Interest on Unlawful Duty Overpayments

Defendants' governing statutes for prior disclosures unambiguously specify nondiscretionary "maximum penalties" and mandate that "any monetary penalty assessed under subsection (c) ***shall not exceed***…if such violation resulted from negligence…the interest…on the amount of ***lawful*** duties, taxes, and fees{.}"  19 U.S.C. § 1592(c)(4)(B) (emphases added).  To date, Defendants' basis for refusing to refund interest on duty overpayments made pursuant to Otter's prior disclosures is the unilateral assertion that:

> The deposits of a prior disclosure are placed into a holding account until the prior disclosure is closed. If there is an overpayment of a prior disclosure, at the time the prior disclosure is closed, the overpayment would be refunded. However, a prior disclosure is not the subject of a liquidation or a reliquidation, just a review and closure with funds disbursed to Customs or refunded to the importer or some combination of disbursement and refund. Because section 1505 deals only with interest tied to liquidations and reliquidations, section 1505 is inapplicable to prior disclosures. ***There is no provision in the statute or the regulations that calls for the assessment of interest on refunds associated with prior disclosures.***

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Email from B.Farrell to L.Mastriani (Oct. 10, 2020) (AK PUBLIC 000455) (emphasis added).

However, Defendants' proffered explanation ignores the maximum penalties permissible by statute for penalties arising from negligence: interest on *lawful* duties, taxes, and fees.  *See* 19 U.S.C. § 1592(c)(4)(B).  CBP's retention of accrued interest imposes a greater penalty on Otter than this statutory maximum.  There is no dispute that Otter filed the three prior disclosures pursuant to 19 U.S.C. § 1592(c)(4) and perfected each disclosure.  *See* Otter Nov. 17th Prior Disclosure Ltr. from P.Hall to Comm'r of Customs (Nov. 17, 2010) (AK CONF 000027-29);  Otter May 16, 2012 Prior Disclosure Ltr. from P.Hall to Comm'r of Customs (AK CONF 002992-7);  LifeProof May 13, 2013 Prior Disclosure Ltr. from W.Sjoberg to Comm'r of Customs (May 13, 2013) (LB CONF 000041-6).  Subsequently, Defendants found a negligent level of culpability with respect to a fraction of prior disclosure duty payments made by Otter in 2020—nearly *a decade* after Otter's November 17, 2010 prior disclosure.  *See* CBP Mem. (June 1, 2020) (AK CONF 000002); CBP Mem. Ex. A, Pre-Penalty Statement (AK CONF 000004-7); *see also* CBP Mem. (June 1, 2020) (AK CONF 000106); CBP Mem. Ex. A, Pre-Penalty Statement (AK CONF 000107-8); *see also* CBP Mem. (July 13, 2020) (LB CONF 000247); CBP Mem. Ex. A., Pre-Penalty Statement (LB CONF 000248-9).  However, by retaining the interest accrued over nearly *ten years* on Otters' prior disclosure overpayments, Defendants' have penalized Otter in excess of Congress' explicit, nondiscretionary maximum penalty of interest on the amount of lawful duties, taxes, and fees negligently underpaid by the discloser.  *See* 19 U.S.C. § 1592(c)(4)(B). Defendants' reading of their governing statutes would further penalize Otter through the loss of interest accrued on *unlawful* duty overpayments.

The absence of a statutory or regulatory provision explicitly assessing interest on refunds associated with prior disclosures should be accorded no deference because it "would 'permit the

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2413 (2019) (citations omitted and emphasis in original).  Were CBP's interpretation permitted to stand, its effect would flout Congress' statutory nondiscretionary mandates regarding the maximum penalties for negligent errors disclosed under a prior disclosure and circumvent the notice-and-comment requirements under the APA.  *See generally* 5 U.S.C. § 553.

### C.      Defendants' Failure to Refund Duty Overpayments With Interest Is Contrary to Law And Equity

Despite Otter's good-faith and reasonable efforts, Defendants have stonewalled, ignored, resisted, and otherwise objected to granting Otter the full relief to which it has been entitled for nearly a decade.  Under the facts and circumstances of this case, there is no legally justifiable reason why CBP should be allowed to unjustly profit from its own delay in processing refunds of duty overpayments made pursuant to the prior disclosures, or that Otter should be deprived of the interest on duty overpayments made in a good faith effort to comply with Customs laws.

*First*, "{t}he official policy of CBP is to encourage the submission of valid prior disclosures."  *See* CBP ABC's of Prior Disclosure Publication (Apr. 2004) (AK PUBLIC 001164).  As a result of the Customs Modernization Act ("Mod Act"), CBP's 2004 Prior Disclosure Publication acknowledged that:

> Two new concepts that emerge from the Mod Act are '***informed compliance***' and '***shared responsibility***,' which are premised on the idea that in order to maximize voluntary compliance with laws and regulations of U.S. Customs and Border Protection, the trade community needs to be clearly and completely informed of its legal obligations. Accordingly, the Mod Act imposes ***a greater obligation on CBP to provide the public with improved information concerning the trade community's rights and responsibilities under customs regulations and related laws***.

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

*Id.* (AK PUBLIC 001166) (citing Pub. L. 103-182, 107 Stat. 2057) (emphases in original and emphases added).[11]  Despite also recognizing that "the Government benefits as well by eliminating or reducing expenditures of valuable investigative resources and manpower" through prior disclosures, CBP has failed to abide by its "***shared responsibility***," much less its self-recognized "greater obligation" to provide improved information concerning public rights and responsibilities. *Id.*  To date, CBP has refused to explain why Otter is not entitled to recover interest on duty overpayments made to CBP based on its erroneous classification, and in fact, has redacted much of that information from the administrative record.  *See* CBP Email from L.Golf to D.Francis & G.Ruiz (Apr. 9, 2019) (AK PUBLIC 000092) ("If you recall when we were going over the Otter prior disclosures last, I stated that we would not pay interest on the money being refunded from the prior disclosures. Below is some additional information to support CBP not paying interest. I am forwarding this to you for your awareness."); Redacted (AK PUBLIC 000092-5).  In other words, the intent underpinning prior disclosures is not to punish importers, but to encourage them to self-police their import practices and voluntarily report any discrepancies to CBP.  Defendants' erroneous misclassifications and subsequent actions have resulted in CBP monetarily profiting from interest accrued at the expense of Otter's duty overpayments resulting from Otter's efforts to comply with Customs laws.

  *Second*, the agency record demonstrates that Defendants' delay in refunding the principal of Otter's duty overpayments was solely due to Defendants' mismanagement of Otter's prior disclosures, duty payments, and internal reorganizations.  Defendants' delay compounded the interest accrued on that principal further unjustly enriching Defendants at the expense of Otter.

---

[11] In 2017, CBP updated its 2004 Prior Disclosure Publication, which contains the same language.  *See* CBP's An Informed Compliance Publication (Aug. 2017) (AK PUBLIC 002028).

MEMORANDUM IN SUPPORT OF OTTER'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

CBP's disorganization with regard to refunding Otter's duty overpayments has been evident since the Federal Circuit upheld the agency's misclassification of Otter's imports. "'Anticipating potential difficulty that {CBP} will encounter in effectuating' the judgment," CBP sought "clarification regarding 'whether the Judgment contemplates a refund of any overpayment of duties associated with the Post-entry Tenders'" from this Court on January 12, 2017. *See Otter Products, LLC v. United States*, Court No. 13-00269, Mem. and Order, Feb. 1, 2017 (AK PUBLIC 001843-5). Following this Court's confirmation that it did, CBP determined to first unwind the (comparatively easier) duty overpayments on protested entries before turning to the prior disclosure overpayments. *Id.* Otter acquiesced *because* it, as reinforced by CBP personnel, understood that interest would continue to accrue on its prior disclosure overpayments and the eventual refund would include said interest. *See* CBP E-mail from P.Crosby to P.Hall (May 4, 2017) (AK PUBLIC 001162) ("Unfortunately, the time will be available because we also learned that CEE has determined that all of the protested entries will be processed before any action is taken on the prior disclosure aspect," but "with respect to the Otter prior disclosure(s)… {t}he only ray of sunshine is that *interest will continue to accrue*") (emphasis added); *see also* Email from S.Pfuetze to L.Golf (Nov. 6, 2018) (AK PUBLIC 001157). CBP's processing of refunds on prior disclosure overpayments was further delayed by its disorganization and mismanagement, such that Otter did not receive refunds of prior disclosure overpayments until nearly a decade after those payments' submission to CBP. *See, e.g.*, CBP E-mails from P.Crosby to P.Hall (Mar. 29-30, 2018) (AK PUBLIC 001393); E-mail from P.Crosby to P.Hall (May 4, 2017) (AK PUBLIC 001162-3) (attaching spreadsheet recalculations, AK CONF 002489-92).

Despite Otter's good-faith efforts to provide CBP with information necessary to promptly refund the prior disclosure overpayments, Defendants continue to flout their statutory obligations

to this day, necessitating yet another complaint before this Court and additional attorney fees and costs at Otter's expense.  Compounded by these equitable principles, Defendants continue to waste both judicial and public taxpayer funds by engaging in needless litigation that is contrary to Congress' plain and unambiguous statutory directives that overpayments to Customs be refunded with interest.  Accordingly, this Court should find that CBP's actions are contrary to law and equity and enter judgment in favor of Otter.

## IX.   CONCLUSION

For the foregoing reasons, Otter respectfully requests that this Court grant Otter's Motion for Judgment on the Agency Record and order Defendants to refund all interest accrued on Otter's duty overpayments associated with its prior disclosures and all costs.

## CERTIFICATE OF COMPLIANCE

Undersigned certifies that Plaintiff Otter Products, LLC's Memorandum in Support of Its Motion for Judgment on the Agency Record complies with the 14,000 word-count limitation set forth in the Rules of the U.S. Court of International Trade, Chambers Procedures. *See* U.S. Ct. Inl' Trade Rules, Chambers Procedures at 413-414 ¶ 2(B). The Memorandum contains 8,913 words according to the word-count function of the word-processing software used to prepare the Memorandum.

Respectfully Submitted,

Dated: September 12, 2022

*/s/ Louis S. Mastriani*

Louis S. Mastriani
Lydia C. Pardini
Juan J. Garcia
**AMS TRADE LLP**
1133 Connecticut Avenue, NW, Suite 1200
Washington, D.C. 20036
Telephone: (202) 467-6300
Facsimile: (202) 466-2006
E-Mail: mastriani@adduci.com

*Counsel to Otter Products, LLC*