UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| OTTER PRODUCTS, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   Court No. 22-00033 |
| | : |
| UNITED STATES OF AMERICA; | : |
| U.S. CUSTOMS AND BORDER PROTECTION; | : |
| and CHRIS MAGNUS, U.S. CUSTOMS AND | : |
| BORDER PROTECTION COMMISSIONER, | : |
| | : |
| Defendants. | : |
| | : |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 56.1
### MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*
SABAHAT CHAUDHARY
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

BEVERLY A. FARRELL
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-0483 or 9230
Attorneys for Defendants

Dated: December 15, 2022

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATEMENT PURSUANT TO RULE 56.1(c)(1) ........................................................ 4

I.      Administrative Determination Under Review ................................................. 4

II.     The Issue Presented For Review ..................................................................... 4

PRIOR PROCEEDINGS ............................................................................................... 4

        1.  Otter's Initial Classification Litigation ..................................................... 4

        2.  Appeal of the Court's Classification Decision.......................................... 5

        3.  Otter's Motion to Enforce the Court's Judgment ..................................... 5

FACTUAL HISTORY..................................................................................................... 6

ARGUMENT .................................................................................................................. 6

I.      STANDARD OF REVIEW ............................................................................. 7

II.     OTTER IS NOT ENTITLED TO INTEREST FOR REFUNDS OF PAYMENTS
        TENDERED IN CONNECTION WITH ITS PRIOR DISCLOSURES ......................... 7

        A.  The Prior Disclosure Mechanism.............................................................. 7

        B.  Sovereign Immunity Has Not Been Waived As To
            Interest On Moneys Tendered With Prior Disclosures ............................... 9

            1.  Interest under 19 U.S.C. § 1520(a) in unavailable under the facts of this case ... 10

            2.  Section 1592(c)(4)(B) does not support Otter's position
                that it is entitled to interest on its tender for prior disclosures........................... 15

            3.  Sections 1505(b) & (c) do not support Otter's position that it is entitled to
                interest on the refund of the excess portion of its tender for prior disclosures ... 16

CONCLUSION................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*American Motorist Ins. Co. v. United States,*
　8 F. Supp. 2d 874 (Ct. Int'l Trade 1998) ................................................................ 12

*Carlingswitch v. United States,*
　651 F.2d 768 (C.C.P.A. 1981) .......................................................................... 12, 13

*Hartog Foods Int'l v. United States,*
　291 F.3d 789 (Fed. Cir. 2002) .......................................................................... 9, 17

*Library of Congress v. Shaw,*
　478 U.S. 310 (1986) .................................................................................. 9, 10, 15

*Otter Prods, LLC v. United States,*
　834 F.3d 1369 (Fed. Cir. 2016) ............................................................................ 5

*Otter Products, LLC v. United States,*
　70 F. Supp. 3d 1281 (Ct. Int'l Trade 2015) ................................................ 2, 4, 5, 6

*Otter Products, LLC v. United States,*
　532 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) .......................................................... 5, 6

*Tikal Distributing Corp. v. United States,*
　970 F. Supp. 1056 (Ct. Int'l Trade 1997) .......................................................... 12, 13

*United States v. N.Y. Rayon Importing Co.,*
　329 U.S. 654 (1947) ............................................................................... 9-10, 15

*United States v. Nat'l Semiconductor Corp.,*
　496 F.3d 1354 (Fed. Cir. 2007) .......................................................................... 13

**Harmonized Tariff Schedule of the United States**

Heading 4202 .............................................................................................. 5

　subheading 4202.99.00 .............................................................................. 2, 4

　subheading 3926.90.99 .............................................................................. 2, 4

**Rules**

USCIT Rule 56.1 ............................................................................................ 1

USCIT Rule 56.1(c)(1) ...................................................................................... 4

**Statutes**

5 U.S.C. § 706 .................................................................................................. 7

5 U.S.C. § 706(2)(A) ......................................................................................... 7

19 U.S.C. § 1505 ....................................................................................... *passim*

19 U.S.C. § 1505(b) ................................................................................... *passim*

19 U.S.C. § 1505(b)-(c) (2000) ...................................................................... 17

19 U.S.C. § 1514(a)(3) ............................................................................... 12, 13

19 U.S.C. § 1520 .............................................................................................. 15

19 U.S.C. § 1520(a) .................................................................................... 10, 11

19 U.S.C. § 1520(a)(1) .................................................................................... 13

19 U.S.C. § 1520(a)(3) ................................................................... 10, 11, 12, 13

19 U.S.C. § 1520(d) ........................................................................................ 16

19 U.S.C. § 1592 ........................................................................................... 3, 9

19 U.S.C. § 1592(c) ....................................................................................... 7, 8

19 U.S.C. § 1592(c)(4) .................................................................................. 1, 8

19 U.S.C. § 1592(c)(4)(B) .............................................................................. 15

19 U.S.C. § 1592(c)(B) ..................................................................................... 2

28 U.S.C. § 1581(i) ........................................................................................... 7

28 U.S.C. § 1582 ............................................................................................. 13

28 U.S.C. § 2640(e) ........................................................................................... 7

**Regulations**

19 C.F.R. § 162.74 ............................................................................................ 1

19 C.F.R. § 162.74(c) ...................................................................................... 11

19 C.F.R. § 162.74(f) ......................................................................................... 8

## <u>Other Authorities</u>

*Prior Disclosure, An Informed Compliance Publication* (August 2017)
   https://www.cbp.gov/sites/default/files/assets/documents/2020-
   Feb/Prior%20Disclosure%20FINAL.pdf ............................................................................ 8, 9

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, JUDGE

———————————————————————

OTTER PRODUCTS, LLC,                                    :
                                                                          :
                                    Plaintiff,                     :
                                                                          :
                        v.                                             :        Court No. 22-00033
                                                                          :
UNITED STATES OF AMERICA;                        :
U.S. CUSTOMS AND BORDER PROTECTION;  :
and CHRIS MAGNUS, U.S. CUSTOMS AND       :
BORDER PROTECTION COMMISSIONER,        :
                                                                          :
                                    Defendants.                 :
                                                                          :
———————————————————————

## **DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendants (the Government) respectfully submit our response in opposition to

plaintiff's, Otter Products, LLC (Otter),[1] Rule 56.1 motion for judgment on the agency record.

For the reasons that follow, the Court should deny Otter's motion, enter judgment for the

Government, and dismiss this action.

## **INTRODUCTION**

This matter arises from Otter's failure to accurately state the value and/or classification of

goods imported into the United States, which precipitated its filing of three prior disclosures in

2010, 2012, and 2013 pursuant to 19 U.S.C. § 1592(c)(4) and 19 C.F.R. § 162.74.  Specifically,

Otter (i) failed to account for assists associated with tools, molds, and/or design or engineering

assistance provided free of charge to the foreign manufacturers of the imported goods; (ii)

---

[1] Although the complaint references "OtterBox" as the importer of record, Otter Products, LLC is
listed as plaintiff and the client upon whose behalf counsel filed two prior disclosures with the
Port of Anchorage, Alaska.  The third prior disclosure at issue was filed by LifeProof, Inc. with
the Port of Long Beach, California.  Upon information and belief, Otter Products, LLC acquired
LifeProof, Inc.  Therefore, for purposes of this Response, we refer only to "Otter."

significantly undervalued thousands of plastic cases covered by certain entries made at the Port of Anchorage, Alaska; and (iii) misclassified certain of its cases.  When Otter tendered payment for the duty on the increased value of the merchandise and/or for the misclassification of the merchandise, it calculated those amounts based on CBP's determination that the subject merchandise was classifiable under subheading 4202.99.00 of the Harmonized Tariff Schedule of the United States (HTSUS) with an *ad valorem* duty rate of 20 percent.

As discussed below, after litigation before this Court and the U.S. Court of Appeals for the Federal Circuit, the classification of the imported merchandise was determined to fall under subheading 3926.90.99, HTSUS, with an *ad valorem* duty rate of 5.3 percent.  In November 2016, Otter sent letters to CBP seeking refunds of the overpayments due to the 14.7 percentage point difference along with applicable interest.  *See, e.g.,* AK CONF 000025.  CBP subsequently refunded to Otter a portion of the tendered amounts for each of the three prior disclosures reflecting the 14.7 percentage point difference, which were reduced by a penalty amount permitted under 19 U.S.C. § 1592(c)(B).

Although Otter's brief appears to conflate the prior disclosures, which are the subject of this action, with the four entries at issue in *Otter Products, LLC v. United States*, Court No. 13-00269 (*Otter I*), there is no dispute that the *Otter I* entries are not covered by the prior disclosures.  Nor is there a dispute that, when the four *Otter I* entries were reliquidated, Otter received refunds of the overpayment of duties along with interest pursuant to 19 U.S.C. § 1505(b) & (c).  The only relevance of the *Otter I* opinion to the subject prior disclosures is that it provides the duty rate applicable to the Otter merchandise.  CBP applied the Court's duty rate determination of 5.3 percent *ad valorem* to calculate all of the Otter refunds.

Otter commenced this action seeking payment of interest on the excess tendered amounts after CBP determined that it had no statutory authority to pay interest when refunding money voluntarily tendered with a prior disclosure.  This is so because prior disclosures do not get liquidated or reliquidated.  Instead, they are "closed out" with refunds being provided when a party has tendered money, and it is determined that there is an overpayment or that no violation occurred.

Although Otter complains of a "Hobson's choice," Pl. Br. at 23-24, in the face of a disagreement as to the classification of merchandise, Otter's actual choice was to make a voluntary tender at the time of filing the prior disclosure or make a tender within 30 days after CBP notifies the party in writing of CBP's calculation of the actual duty loss.  Given that the classification of the goods was in dispute, the *actual* duty loss would turn on the applicable duty rate.  Otter could simply have waited for this notice.

Further, based on CBP's Prior Disclosure Informed Compliance Publication, Otter would be aware that "[i]f, upon a thorough review of the facts relating to the prior disclosure, CBP determines that there was no violation of 19 U.S.C. § 1592, it is CBP's policy to refund the actual loss of duties on liquidated entries tendered with the prior disclosure."  There is no mention of interest.  Nor could there be, as no statutory provision calls for the award of interest on a prior disclosure.  And provisions permitting interest on liquidation and reliquidations, such as sections 1505(b) and (c), cannot be construed to allow for the award of interest when no statute expressly and unambiguously has waived sovereign immunity for such an award.

## STATEMENT PURSUANT TO RULE 56.1(c)(1)

**I.      Administrative Determination Under Review**

Otter challenges the determination of U.S. Customs and Border Protection (CBP) that no statutory provision calls for the accrual and payment of interest on refunds of excess moneys tendered with a prior disclosure.

**II.     The Issue Presented For Review**

Whether interest should have been calculated on and included with refunds made to Otter for overpayments on money tendered with three prior disclosures filed with CBP.

## PRIOR PROCEEDINGS

1.   Otter's Initial Classification Litigation

In 2013, Otter commenced an action covering four entries that disputed CBP's classification determination that its imported cases for certain electronic devices were classifiable as cases under subheading 4202.99.00, HTSUS, with a duty rate of 20 percent *ad valorem*. *Otter Products, LLC v. United States*, 70 F. Supp. 3d 1281 (Ct. Int'l Trade 2015) (*Otter I*). The action contained two counts, one disputing the classification of the imported merchandise, and one seeking a refund of "all additional overpayment of duties paid on assists" "[i]n addition to the refund of duties paid by OtterBox upon the entry and liquidation of the subject merchandise." *Id.* at 1284 (alteration in original).

In *Otter I*, the Court determined that the imported merchandise is classifiable under subheading 3926.90.99, HTSUS, rather than under subheading 4202.99.00 as assessed by CBP. *Id.* at 1295. Based on Otter's assertion that it had made payments for assists subject to a prior disclosure in connection with the entries before the Court, the Court discussed the effects of a classification protest on money tendered with a prior disclosure. *Id.* at 1296-97. The Court

4

concluded that because Otter protested classification, rather than a charge or exaction, the liquidation of the subject entries is not final and the ultimate classification determination applies to the value of the transaction, including the value of assists.  *Id.* at 1296.

On May 26, 2015, the Court issued its judgment, which, among other things, ordered "that Defendant shall reliquidate the entries covered by this action with a refund of all duties overpaid, plus interest, as provided by law."  Docket Entry No. 57.

### 2.  Appeal of the Court's Classification Decision

The Government appealed the trial court's classification determination to the U.S. Court of Appeals for the Federal Circuit.  *Otter Prods, LLC v. United States*, 834 F.3d 1369 (Fed. Cir. 2016) (*Otter II*).  In affirming the trial court's classification decision, the Federal Circuit clarified "that there is no requirement that the subject merchandise meet all four characteristics to qualify as a 'similar container' under Heading 4202."  *Id.* at 1378.  The issue of refunds of money tendered with prior disclosures was not raised on appeal.

### 3.  Otter's Motion to Enforce the Court's Judgment

On June 2, 2021, Otter filed a motion to enforce the Court's judgment with respect to a December 5, 2013 prior disclosure filed with CBP in Los Angeles that had closed in November 2014.  *Otter Products, LLC v. United States*, 532 F. Supp. 3d 1345, 1347 (Ct. Int'l Trade 2021) (*Otter III*).  In its motion, Otter claimed that the *Otter I* judgment extended to the entries covered by the closed prior disclosure.  Attachment A to the Government's response is an email string containing an email from Otter's counsel confirming that the four entries at issue "are not tied to any of the prior disclosures."  Docket No. 76-1 at 9.  The email string also reflects an email dated October 20, 2020 discussing when statutory law requires interest to be paid in connection with a refund of duties.  Docket No. 76-1 at 12.  Ultimately the Court determined that "[b]ecause the

entries associated with the Prior Disclosures were not part of the Subject Protest, they are not part of this action and the Court does not have jurisdiction to order the relief OtterBox requests." *Otter III* at 1351.

## FACTUAL HISTORY

This action concerns three prior disclosures filed by Otter or its predecessor in interest, LifeProof, at the Port of Anchorage, Alaska and the Port of Long Beach, California. The prior disclosures relate to the underpayment of duties resulting from misclassification, the failure to include the value of assists in the valuation of the imported merchandise reflected in the entry paperwork, and the undervaluation of thousands of cases covered by certain entries made at the Port of Anchorage. Again, it is worth noting that the entries from *Otter I* are not covered by the prior disclosures.

Otter's discussion of the salient facts concerning the November 17, 2010 prior disclosure filed with the Port of Anchorage, Alaska; May 16, 2012 prior disclosure filed with the Port of Anchorage, Alaska, and the May 13, 2013 prior disclosure filed with the Port of Long Beach, California, Pl. Br. at 5-12, is largely accurate. However, there are times Otter claims to have "perfected" its prior disclosure on a date certain, Pl. Br. at 5 and 10, when further payments were made later. Nevertheless, we do not dispute the critical facts concerning the prior disclosures discussed at pages 5 through 12 of Otter's brief.

Similarly, we agree that, as reflected in CBP's closeout letters for the three prior disclosures, overpayments were refunded without interest. *See* Pl. Br. at 18.

## ARGUMENT

In the only count of its complaint, Otter seeks a payment of interest on refunds of overpayments of moneys tendered made in connection with its prior disclosures. An award of

interest against the Government is not available to Otter unless there has been an express waiver

of sovereign immunity from an award of interest.  In its pleadings and briefing, Otter has not

identified any statutory provision providing for such a waiver for interest with respect to the

tender of moneys made in connection with a prior disclosure under 19 U.S.C. § 1592(c).

Therefore, Otter is not entitled to the interest it seeks, and this action should be dismissed.

## I.      STANDARD OF REVIEW

Otter commenced this consolidated action pursuant to 28 U.S.C. § 1581(i).  Compl. ¶ 7,

Docket No. 2.  Pursuant to section 1581(i), "the Court of International Trade shall review the

matter as provided in section 706 of title 5" (the Administrative Procedure Act (APA)).

28 U.S.C. § 2640(e).  In making its determinations, "the court shall review the whole record or

those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

5 U.S.C. § 706.

Under the APA, an agency's determination may be set aside if found to be "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).

## II.     OTTER IS NOT ENTITLED TO INTEREST FOR REFUNDS OF PAYMENTS TENDERED IN CONNECTION WITH ITS PRIOR DISCLOSURES

### A.  The Prior Disclosure Mechanism

A prior disclosure is a statutory mechanism permitting an importer to voluntarily disclose

improprieties in its entries in exchange for limiting the importer's liability should CBP issue a

penalty.  19 U.S.C. § 1592(c)(4).[2]  To receive the benefits of a prior disclosure, an importer must

---

[2] Section 1592(c)(4) provides:

(4) Prior disclosure

disclose the circumstances of its violation prior to, or without knowledge of, the commencement

of a formal investigation and it must tender, whether at the time or disclosure or within 30 days

after CBP notifies the person in writing of CBP's calculation, the amount of duties, taxes, and

fees the Government was deprived of because of the importer's wrongful conduct.  *Id.*

Thereafter, the Fines, Penalties, and Forfeitures Officer for the port where the prior

disclosure is filed must verify the prior disclosure.  19 C.F.R. § 162.74(f); *see also, Prior*

---

If the person concerned discloses the circumstances of a violation of subsection (a) before, or without knowledge of, the commencement of a formal investigation of such violation, with respect to such violation, merchandise shall not be seized and any monetary penalty to be assessed under subsection (c) shall not exceed—

(A) if the violation resulted from fraud—
(i) an amount equal to 100 percent of the lawful duties, taxes, and fees of which the United States is or may be deprived, so long as such person tenders the unpaid amount of the lawful duties, taxes, and fees at the time of disclosure, or within 30 days (or such longer period as the Customs Service may provide) after notice by the Customs Service of its calculation of such unpaid amount, or (ii) if such violation did not affect the assessment of duties, 10 percent of the dutiable value; or

(B) if such violation resulted from negligence or gross negligence, the interest (computed from the date of liquidation at the prevailing rate of interest applied under section 6621 of title 26) on the amount of lawful duties, taxes, and fees of which the United States is or may be deprived so long as such person tenders the unpaid amount of the lawful duties, taxes, and fees at the time of disclosure, or within 30 days (or such longer period as the Customs Service may provide) after notice by the Customs Service of its calculation of such unpaid amount.

The person asserting lack of knowledge of the commencement of a formal investigation has the burden of proof in establishing such lack of knowledge. For purposes of this section, a formal investigation of a violation is considered to be commenced with regard to the disclosing party and the disclosed information on the date recorded in writing by the Customs Service as the date on which facts and circumstances were discovered or information was received which caused the Customs Service to believe that a possibility of a violation of subsection (a) existed.

*Disclosure, An Informed Compliance Publication* (August 2017) (*Prior Disclosure*).[3]  If no violation is found, CBP policy provides that the prior disclosure should be refunded to the disclosing party.  *Prior Disclosure* at 10.  Nevertheless, section 1592 is silent regarding the payment of interest.

Where CBP refunds moneys tendered in connection with a prior disclosure, interest on those refunds is only permissible if there has been an express waiver of sovereign immunity as to the payment of interest.  Because prior disclosures do not undergo liquidation, interest pursuant to section 1505(b) & (c) is inapplicable.

B.  Sovereign Immunity Has Not Been Waived As To
   Interest On Moneys Tendered With Prior Disclosures

"The no-interest rule is to the effect that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest."  *Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986) (superseded by statute as to other issues); *see also Hartog Foods Int'l v. United States*, 291 F.3d 789, 791 (Fed. Cir. 2002) ("Without an express statutory waiver, the United States is immune from interest.").  The fact that the United States may waive immunity as to being sued does not include a commensurate waiver as to paying interest on a money judgment.  Instead, interest may only be recovered when an "award of interest was affirmatively and separately contemplated by Congress."  *Library of Congress*, 478 U.S. at 315.

When determining whether immunity has been waived, a court "must construe waivers strictly in favor of the sovereign . . . and not enlarge the waiver 'beyond what the language requires.'"  *Id.* at 318 (citations omitted).  Moreover, "there can be no consent by implication or

---

[3] This publication is available at https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/Prior%20Disclosure%20FINAL.pdf.

by use of ambiguous language." *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659

(1947). Nor can policy reasons underpinning the recovery of money damages against the United

States be read to constitute a waiver of immunity from interest. *Id.* at 663 ("Courts lack the

power to award interest against the United States on the basis of what they think is or is not

sound policy.") Further, "[t]he no-interest rule has been applied to prevent parties from holding

the United States liable on claims grounded on the belated receipt of funds, even when

characterized as compensation for delay." *Library of Congress*, 478 U.S. at 322.

Thus, for Otter to be entitled to the payment of interest on the refunds it must identify an

express, unambiguous waiver of sovereign immunity as to interest on refunds of prior

disclosures. Otter has failed to identify any such express waiver.

1. Interest under 19 U.S.C. § 1520(a) in unavailable under the facts of this case

Otter contends that 19 U.S.C. § 1520(a)(3) provides the basis for an award of interest on

refunds paid in connection with a prior disclosure. Pl. Br. at 21-24. Otter is wrong.

Section 1520(a)[4] authorizes CBP to issue refunds in distinct situations, such as when a fine or

penalty is issued and later found to be unsubstantiated or to have accrued in an amount less than

that deposited. 19 U.S.C. § 1520(a)(3).

---

[4] Section 1520(a) provides:

  (a) Cases in which refunds authorized
  The Secretary of the Treasury is authorized to refund duties or other receipts in the
  following cases:
  (1) Excess deposits.—
  Whenever it is ascertained on liquidation or reliquidation of an entry or
  reconciliation that more money has been deposited or paid as duties than was
  required by law to be so deposited or paid.

  (2) Fees, charges, and exactions.—
  Whenever it is determined in the manner required by law that any fees, charges, or
  exactions, other than duties and taxes, have been erroneously or excessively
  collected.

Otter's position that it "should be entitled to interest on the overpayments because they were made involuntarily" and somehow should fall within the rubric of section 1520(a)(3)'s penalty or fine should be rejected as contrary to the plain meaning of a penalty or fine in the context of this provision.[5]  That Otter felt compelled to tender its payments does not convert the tender into money deposited on account of a fine, penalty, or forfeiture.  Moreover, Otter could have filed its prior disclosures and requested to tender its payments after CBP's notification of the actual loss of duties, taxes, fees or actual loss of revenue in light of the pending classification dispute.  *See* 19 C.F.R. § 162.74(c) ("The disclosing party may choose to make the tender either at the time of the claimed prior disclosure, or within 30 days after CBP notifies the person in writing of CBP calculation of the actual loss of duties, taxes and fees or actual loss of revenue. The Fines, Penalties, and Forfeitures Officer may extend the 30–day period if there is good cause to do so.").

Here, there was no fine or penalty issued by CBP.  Instead, in an effort to avoid the issuance of a penalty, Otter submitted three prior disclosures and tendered duties at a

---

(3) Fines, penalties, and forfeitures.—
Whenever money has been deposited in the Treasury on account of a fine, penalty, or forfeiture which did not accrue, or which is finally determined to have accrued in an amount less than that so deposited, or which is mitigated to an amount less than that so deposited or is remitted.

(4) Prior to liquidation.—
Prior to the liquidation of an entry or reconciliation, whenever an importer of record declares or it is ascertained that excess duties, fees, charges, or exactions have been deposited or paid.

[5] Section 1520(a)(3) refers to moneys paid "on account of a fine, penalty, or forfeiture."  In other words, such payments are made because a fine, penalty or forfeiture has been charged against a person.  This is contrary to the very concept of a prior disclosure, which requires that a person disclose the circumstances of its violation prior to, or without knowledge of, a formal investigation.

classification rate that it disputed.  Pl. Br. at 1.  However, a tender submitted prior to the imposition of a penalty is not included within section 1520(a)(3).  *See Carlingswitch v. United States*, 651 F.2d 768 (C.C.P.A. 1981) (holding that a voluntary tender submitted prior to the imposition of a penalty is not included within section 1520(a)(3)); *American Motorist Ins. Co. v. United States*, 8 F. Supp. 2d 874, 876 (Ct. Int'l Trade 1998) (defining an exaction as "a 'wrongful demand for payment under color of official authority, where no payment is due'"); *Tikal Distributing Corp. v. United States*, 970 F. Supp. 1056, 1060 (Ct. Int'l Trade 1997) (holding that a voluntary tender is not a charge or exaction as contemplated by 19 U.S.C. 1514(a)(3)).

*Carlingswitch* is instructive.  In that case, an importer under investigation for understating the costs of electrical articles assembled in Mexico and subsequently imported into the United States, voluntarily paid customs duties in the approximate amount of $91,000, which it designated as "additional tariff" or "withheld duties," pursuant to Customs' "voluntary disclosure" practice.  That practice provided that "a voluntary disclosure of violations of the customs laws, accompanied by a deposit of an amount equal to the total loss of revenue to the government will, in specified circumstances, result in mitigation of the penalty to an amount not exceeding the government's total loss of revenue."  *Id.* at 769-70.  After completing its investigation, Customs demanded nearly $8 million as forfeiture value, but Customs informed the importer that the statute of limitations had run, and the claim was remitted in its entirety.  *Id.* at 770.  The importer then requested a refund of the $91,000 it had voluntarily paid, which was denied by Customs because "although the statute of limitations had run on the claimed money, the actual revenue loss to the government was $174,573.21, and it assumed that appellant's voluntary payments were made to cover part of that loss."  *Id.*  The importer protested and then

12

filed an action contesting the denial, claiming that the court had jurisdiction because "by virtue of 19 U.S.C. § 1520(a)(3), which relates to refunds, Customs' refusal to refund the moneys paid amounted to a 'charge or exaction' within the meaning of 19 U.S.C. § 1514(a)(3)[;] and therefore the trial court had jurisdiction over the dispute pursuant to 28 U.S.C. § 1582." *Id.*

In affirming the trial court's dismissal for lack of jurisdiction, the CCPA stated:

> Additionally, we disagree with the theory that the payments made by appellant should have been refunded pursuant to 19 U.S.C. § 1520(a)(3). That section refers to monies paid "on account of a fine, penalty, or forfeiture," none of which had been charged against appellant at the time of the payments in question. The monies were deposited as "additional tariff" and as "withheld duties" to alleviate any potential penalty. The two concepts are not equivalent.

*Id*. at 773.

Similarly, Otter's voluntary tenders with its prior disclosures do not fall within the purview of section 1520(a)(3).

Otter does not contend that section 1520(a)(1) is applicable in this action. *See generally,* Compl.; Pl. Br. When CBP reliquidated the entries for which a classification protest had been filed, it refunded the difference between 20 percent *ad valorem* (the duty rate that this Court found inapplicable to identical or similar imported merchandise) and 5.3 percent *ad valorem* (the rate this Court found applicable) of the duties deposited based on the valuation asserted by Otter at entry. The reliquidation refunds were paid with interest pursuant to 19 U.S.C. § 1505(b) & (c).[6] *See United States v. Nat'l Semiconductor Corp.*, 496 F.3d 1354, 1360 (Fed. Cir. 2007) (for interest under section 1505(c) to accrue there must be a liquidation or reliquidation of an entry).

---

[6] 19 U.S.C. § 1505 provides:

(a) Deposit of estimated duties and fees

Unless the entry is subject to a periodic payment referred to in this subsection or the merchandise is entered for warehouse or transportation, or under bond, the

importer of record shall deposit with the Customs Service at the time of entry, or at such later time as the Secretary may prescribe by regulation (but not later than 12 working days after entry or release) the amount of duties and fees estimated to be payable on such merchandise. As soon as a periodic payment module of the Automated Commercial Environment is developed, but no later than October 1, 2004, the Secretary shall promulgate regulations, after testing the module, permitting a participating importer of record to deposit estimated duties and fees for entries of merchandise, other than merchandise entered for warehouse, transportation, or under bond, no later than the 15 working days following the month in which the merchandise is entered or released, whichever comes first.

(b) Collection or refund of duties, fees, and interest due upon liquidation or reliquidation

The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

(c) Interest

Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation. Interest on excess moneys deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest or, in a case in which a claim is made under section 1520(d) of this title, from the date on which such claim is made, to the date of liquidation or reliquidation of the applicable entry or reconciliation. The Secretary may prescribe an alternative mid-point interest accounting methodology, which may be employed by the importer, based upon aggregate data in lieu of accounting for such interest from each deposit data provided in this subsection.

(d) Delinquency

If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b), any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation or reliquidation until the full balance is paid. No interest shall accrue during the 30-day period in which payment is actually made.

14

Finally, section 1520 does not expressly provide for the payment of interest even if a refund of a prior disclosure is within its purview.  Under the no-interest rule of *Library of Congress v. Shaw*, without an express, unambiguous statement the United States is immune from the payment of interest.

      2.   Section 1592(c)(4)(B) does not support Otter's position
             that it is entitled to interest on its tender for prior disclosures

Otter contends that section 1592(c)(4)(B)'s reference to "interest . . . on the amount of lawful duties, taxes, and fees of which the United States is or may be deprived," which serves as the cap of any monetary penalty for negligence, somehow entitles it to interest on the difference between 20 percent and 5.3 percent on the prior disclosure amounts tendered.  Otter further argues that "[t]he absence of a statutory or regulatory provision explicitly assessing interest on refunds associated with prior disclosure should be accorded no deference because it "would 'permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation."  Pl. Br. at 25-26.

Otter's argument is misplaced.  As we discussed above, binding Supreme Court authority holds that, without a waiver of sovereign immunity as to the award of interest, no such interest can be awarded.  Moreover, Otter requests that this Court do that which the Supreme Court has held it cannot:  find "consent by implication or by use of ambiguous language."  *N.Y. Rayon Importing Co.*, 329 U.S. at 659.  Nothing in section 1592(c)(4)(B)'s penalty cap language can be construed to constitute a waiver of sovereign immunity such that an "award of interest was affirmatively and separately contemplated by Congress."  *Library of Congress*, 478 U.S. at 315.

Similarly, for the reasons addressed above, Otter's argument that a failure to include interest with the prior disclosure refunds is contrary to law and equity must fail.  Pl. Br. at 26-29.  Again, there has been no express, unambiguous waiver of sovereign immunity as to an award of

interest on a prior disclosure overpayment associated with a liquidated entry.  Nor can Otter find

one because the Customs Modernization Act calls for "informed compliance" and "shared

responsibility."  For sure, these concepts exist, but they do not constitute the express,

unambiguous waiver required by the Supreme Court to afford the award of interest in the context

of a prior disclosure.  Moreover, that Congress authorized a penalty for violations self-reported

by a party and used an interest calculation on revenue lost to set the amount of that penalty

cannot be interpreted as a sovereign immunity waiver authorizing CBP to pay interest when a

prior disclosure tender in excess of the lost revenue is refunded.

> 3.  Sections 1505(b) & (c) do not support Otter's position that it is entitled to
> interest on the refund of the excess portion of its tender for prior disclosures

Otter contends that 19 U.S.C. §§ 1505(b) & (c) provide support for its position that it

should receive interest on its prior disclosure refunds.  Pl. Br. at 3-4, 21-23.  However, as

explained below, the payment of accrued interest that Otter seeks in this action is not authorized

by 19 U.S.C. §§ 1505(b) & (c) because those provisions only apply to liquidations and

reliquidations.  As discussed above, prior disclosures are not liquidated, they are closed when

complete.

Section 1505(b) authorizes CBP to issue a refund with interest on the "excess moneys

deposited" in certain circumstances as a result of the liquidation or reliquidation of an entry.

Section 1505(c) provides that "[i]nterest on excess moneys deposited shall accrue, at a rate

determined by the Secretary, from the date the importer of record deposits estimated duties, fees,

and interest or, in a case in which a claim is made under section 1520(d) of this title, from the

date on which such claim is made, to the date of liquidation or reliquidation of the applicable

entry or reconciliation."  Thus, by its plain terms, if a refund does not result from liquidation or

reliquidation, then interest under section 1505 is not implicated.

In *Hartog Foods*, the Federal Circuit reviewed the trial court's judgment which affirmed "Customs' denial of interest because the drawback moneys did not qualify as 'excess moneys deposited' under 19 U.S.C. § 1505(b)-(c) (2000), and because the United States Code does not unequivocally waive sovereign immunity for an award of interest on drawback claims."  291 F.3d 789, 791 (Fed. Cir. 2002).  The appellate court noted that section 1505 provided no express definition of "excess moneys deposited," and looked at the plain meaning of the term, along with the case law.  The Federal Circuit agreed with the trial court's reasoning that "no matter how unusual or compelling the facts of a case, sovereign immunity principles govern and permit interest only if the United States Code has expressly and unequivocally waived sovereign immunity and authorized such awards."  *Id*. at 795.

Although section 1505 permits interest awards for "excess moneys deposited' when determined to be due on the liquidation or reliquidation of an entry, this language must be strictly construed.  *Id.*  The phrase "excess moneys deposited" is limned by a liquidation or reliquidation determination.  A court cannot broaden the meaning of such language.  *Id.*  Just as the *Hartog* court could not find that the phrase "excess moneys deposited" included the drawbacks at issue, so, too, this Court should narrowly construe this phrase to relate only to interest that has been determined by a liquidation or reliquidation.  This is so because "[s]overeign immunity and the 'no interest' rule compel great specificity," which is lacking here.  *See Id.*  Section 1505 simply lacks the requisite specificity."  *Id.* at 795.  Accordingly, section 1505 does not authorize payment of accrued interest on Otter's prior disclosure claims.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that plaintiff's motion for judgment on the agency record be denied and judgment entered for defendants.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
       JUSTIN R. MILLER
       Attorney-In-Charge
       International Trade Field Office

*Of Counsel*                              /s/Beverly A. Farrell
SABAHAT CHAUDHARY                          BEVERLY A. FARRELL
Office of Assistant Chief Counsel          Senior Trial Attorney
International Trade Litigation             Department of Justice, Civil Division
U.S. Customs and Border Protection         Commercial Litigation Branch
                                           International Trade Field Office
                                           26 Federal Plaza, Room 346
                                           New York, New York 10278
                                           Tel.: (212) 264-0483 or 9230
                                           Attorneys for Defendants

Dated: December 15, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, JUDGE

_____
OTTER PRODUCTS, LLC,                              :
                                                  :
                       Plaintiff,                 :
                                                  :
          v.                                      :   Court No. 22-00033
                                                  :
UNITED STATES OF AMERICA;                         :
U.S. CUSTOMS AND BORDER PROTECTION;               :
and CHRIS MAGNUS, U.S. CUSTOMS AND                :
BORDER PROTECTION COMMISSIONER,                   :
                                                  :
                       Defendants.                :
_____         :


## <u>CERTIFICATE OF COMPLIANCE</u>

I, BEVERLY A. FARRELL, a Senior Trial Attorney in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is the attorney responsible for Defendants' Response to Plaintiff's Rule 56.1 Motion

for Judgment on the Agency Record, relying upon the word count feature of the word processing

program used to prepare the response, certify that this memorandum complies with the word

count limitation under the Court's chambers procedures and contains 5,443 words.

                                        <u>/s/ Beverly A. Farrell</u>
                                        Beverly A. Farrell