Slip Op. 23-43

## UNITED STATES COURT OF INTERNATIONAL TRADE

OTTER PRODUCTS, LLC,

      Plaintiff,

v.

UNITED STATES, ET AL.,

      Defendants.

Before: Claire R. Kelly, Judge

Court No. 22-00033

## OPINION

[Dismissing for lack of jurisdiction plaintiff's action for interest on customs duty overpayments made in connection with prior disclosures.]

Dated: March 29, 2023

Louis S. Mastriani and Lydia C. Pardini, Polsinelli PC, of Washington, DC for plaintiff Otter Products, LLC.

Beverly A. Farrell, Senior Trial Attorney, and Justin R. Miller, Attorney-In-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY for defendants United States, U.S. Customs and Border Protection, and Chris Magnus in his capacity as Commissioner of U.S. Customs and Border Protection. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel on the brief was Sabahat Chaudhary, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of Washington, DC.

      Kelly, Judge:  Before the court is plaintiff Otter Products, LLC's motion for

judgment on the agency record challenging the refusal of defendants United States,

U.S. Customs and Border Protection ("CBP"), and CBP Commissioner Chris Magnus

(collectively "Defendants") to pay interest on Otter's duty overpayments.  [Otter's]

Court No. 22-00033                                                              Page 2

Mot. J. on the Agency R. ("Pl. Mot.") and accompanying Mem. Supp. [Pl. Mot.] ("Pl. Br."), Sept. 12, 2022, ECF Nos. 28–29; see also [Otter's] Reply Supp. [Pl. Mot.], Feb. 16, 2023, ECF No. 40.   Otter claims that CBP's refusal to pay interest on its duty overpayments made in connection with its prior disclosures is contrary to law, arbitrary, capricious, an abuse of discretion, and contrary to equity.[1]   Pl. Mot. at 1. Defendants argue Congress did not provide for interest on duty overpayments in connection with prior disclosures.   Defs.' Resp. to [Pl. Mot.] at 3, 6–17, Dec. 15, 2022, ECF No. 34 ("Def. Br.").   For the following reasons, the court dismisses the case for lack of subject matter jurisdiction.

## BACKGROUND

Otter is the importer of record of the Commuter and Defender Series cell phone cases.   Starting in 2010, Otter discovered that it (i) had failed to declare the value of certain assists[2] in connection with the valuation of its products and (ii) had

---

[1] A "prior disclosure" is an administrative mechanism permitting an importer to voluntarily disclose its violations of customs law to limit its liability for penalties.   See 19 U.S.C. § 1592(c)(4).

[2] An "assist" is one of the following a buyer of imported merchandise provides free of charge or at reduced cost for use in producing or exporting the merchandise to the United States:

    (i)     Materials, components, parts, and similar items incorporated in the imported merchandise.

    (ii)    Tools, dies, molds, and similar items used in the production of the imported merchandise.

    (iii)   Merchandise consumed in the production of the imported merchandise.

(footnote continued)

inconsistently classified those products.  Specifically, at the time of entry, Otter had

classified its cases under both 3926.90.9980 of the Harmonized Tariff Schedule of the

United States (2012) ("HTSUS"), subject to a 5.3 percent duty rate and 4202.32.9560,

HTSUS, subject to a 17.6 percent duty rate, instead of under 4202.99.9000, HTSUS,

at a 20 percent duty rate.  Letter to CBP at 2, AK 1661–66 (May 16, 2012), ECF No.

46-3.[3]  In connection with these errors, Otter later filed several prior disclosures to

limit its potential penalty exposure.[4]

First, on November 17, 2010, Otter submitted a prior disclosure, which covered

assists it provided since 2006 in connection with its finished durable protective

covers.[5]  See Letter to Commissioner of Customs at 1–2, AK 27–29 (Nov. 17, 2010),

---

(iv) Engineering, development, artwork, design work, and plans and
sketches that are undertaken elsewhere than in the United States and
are necessary for the production of the imported merchandise.

19 U.S.C. § 1401a(h)(1)(A).

[3] Defendants initially filed certain documents in the administrative record under seal.
See ECF Nos. 24–25.  In a letter to the parties on March 3, 2023, the court required
the parties to inform the court which documents are no longer confidential and to
refile the documents remaining confidential after marking the specific confidential
information in each document.  See ECF No. 41.  On March 17 and 20, 2023, the
parties complied with the court's request.  See ECF Nos. 43, 45–64.  Citations to the
administrative record in this opinion are to documents the parties made public.
Additionally, the page numbers of these citations have been shortened.  For example,
"AK PUBLIC 001661–66" is written as "AK 1661–66."

[4] An importer makes a prior disclosure orally or in writing to a CBP officer and
tenders any actual loss of duties, taxes and fees, or actual loss of revenue.  19 C.F.R.
§ 162.74(a)(1).

[5] At the time Otter submitted its prior disclosures, CBP had liquidated the entries

(footnote continued)

ECF No. 46; <u>see also</u> CBP Mem., AK 14 (Apr. 24, 2019), ECF No. 46.  Between

September 29, 2011 and July 30, 2012, Otter submitted interim duty payments

related to the value of the assists it received for entries in the time period from

January 1, 2006 to May 2, 2012 ("PD Payment 1").  Letter to CBP at 1–3, AK 31–34

(Feb. 17, 2011), ECF No. 46 (covering assists from January 1, 2006 to December 21,

2010); Letter to CBP at 1, AK 136–38 (Sept. 29, 2011), ECF No. 46 (covering assists

from January 1, 2011 to August 31, 2011); Letter to CBP at 1–2, AK 143–47 (May 7,

2012), ECF No. 46 (payment for assists from January 1, 2006 to December 31, 2011);

Letter to CBP at 1, AK 149–153 (July 30, 2012), ECF No. 46 (payment for assists from

January 1, 2012 to May 2, 2012); <u>see</u> Letter to CBP at 1–2, AK 132–34 (Mar. 23,

2011), ECF No. 46 (proposing quarterly interim duty payments).  PD Payment 1

reflected the additional duty due as a result of applying the ad valorem rate of duty

associated with subheading 4202.99.9000, HTSUS, i.e., 20 percent as applied to the

---

related to each prior disclosure.  <u>See, e.g.</u>, Table of Prior Disclosures at 1, LB 472, ECF No. 47; CBP Mem. Ex. A at 3, AK 106–12 (June 1, 2020), ECF No. 46.  Otter imported the goods related to the second prior disclosure from 2007 to 2012, <u>see</u> Letter to CBP, Ex. A, AK 1677 (July 9, 2012), ECF No. 46-3, and it appears that CBP liquidated those entries between 2008 and 2013.  The second prior disclosure covers hundreds of entries between 2007 and 2012, and it is unclear from the record exactly when each of them liquidated.  <u>See</u> Letter to CBP, Ex. B, AK 1679–715 (July 9, 2012), ECF No. 46-3.  However, it is likely those entries liquidated prior to one year after the last entry in 2012.  <u>See</u> 19 C.F.R. § 159.11(a) (CBP must liquidate entries within one year of entry or the entries will be deemed liquidated by operation of law unless the time is validly extended).  Otter imported the merchandise related to the third prior disclosure from July 1, 2011 through April 30, 2014, and CBP liquidated those entries on May 10, 2012; May 11, 2013; March 12, 2014; May 11, 2014, September 11, 2014; and January 9, 2015.  <u>See, e.g.</u>, Table of Prior Disclosures at 1, LB 472, ECF No. 47.

value of the assists that had not been properly declared.  See Letter to CBP at 2, AK

136–38 (Sept. 29, 2011), ECF No. 46 (discussing accounting for assists and calculation

of loss of revenue).    After tendering PD Payment 1 and CBP approved its

reconciliation applications, Otter began flagging entries for value reconciliation on

May 3, 2012 going forward, to account for the value of assists.[6]  Letter to CBP at 2,

AK 149–153 (July 30, 2012), ECF No. 46; see also Letter to CBP at 2, AK 136–38

(Sept. 29, 2011), ECF No. 46 (at the direction of CBP, Otter applied to participate in

reconciliation, while making periodic interim duty payments on assists).

On May 16, 2012, Otter submitted its second prior disclosure concerning

certain errors, including both classification and valuation errors, on its duties of

durable protective covers entered between 2007 and March 2012.[7]  Letter to CBP at

1–2, Ex. A, AK 1668–77 (July 9, 2012), ECF No. 46-3; Letter to CBP at 1–3, AK 1661–

66 (May 16, 2012), ECF No. 46-3.  Otter, in this second prior disclosure letter,

---

[6] Reconciliation is an electronic process permitting an importer to delay providing to CBP certain elements of entry, other than those related to admissibility. 19 U.S.C. § 1401(s).  Reconciliation is an entry for purposes of liquidation, reliquidation, recordkeeping, and protest.  Id.

[7] Otter informed CBP of the following errors:

> (1) misclassification of certain of its finished cases under 3926.90.9980, HTSUS, at a 5.3 percent rate of duty or under 4202.32.9560, HTSUS, at a 17.6 percent rate of duty;
> (2) misclassification of certain component parts of cases under 4202.99.9000, HTSUS, at a 20 percent rate of duty;
> (3) incorrect transcription of invoice values onto CBP Form 7501; and
> (4) incorrect invoice prices.

See Letter to CBP at 2–3, AK 1661–66 (May 16, 2012), ECF No. 46-3.

informed CBP that Otter had protested CBP's classification of its merchandise under the subheading 4202.99.9000, HTSUS, at the 20 percent duty rate, instead of the subheading 3926.90.9980, HTSUS, at the 5.3 percent duty rate, which could ultimately impact the duty rate of the entries underlying that prior disclosure.[8]  See Letter to CBP at 3 n.1, AK 1668–77 (July 9, 2012), ECF No. 46-3.  On July 9, 2012, Otter submitted its additional duty payment in connection with the errors for its entries from 2007 to March 2012 ("PD Payment 2").  Letter to CBP at 1, Att. A, AK 1668–77 (July 9, 2012), ECF No. 46-3; see also Check No. 22080, AK 1675 (July 5, 2012), ECF No. 46-3.

On May 13, 2013, TreeFrog Developments, Inc. d/b/a LifeProof ("LifeProof") submitted a prior disclosure concerning assists it provided for finished durable protective covers entered between July 2011 and April 30, 2013.  Letter to CBP at 1, LB 37–39 (Nov. 23, 2016), ECF No. 47; Letter to CBP at 1, 4, Exs. A, B, LB 41–51 (May 13, 2013), ECF No. 47.  On June 3, 2013, LifeProof amended its prior disclosure naming Otter the importer of record for its entries when one of Otter's companies purchased LifeProof.  See Letter to CBP at 1–2, LB 92–93 (June 3, 2013), ECF No. 47; see also Ex. A: Pre-Penalty Statement, LB 458–60, ECF No. 47 ("LifeProof started

---

[8] These protests Otter filed beginning June 2011 are distinct from those involved in the first court action Otter filed later on July 2, 2013.  See Letter to CBP at 2 n.2, AK 1661–66 (May 16, 2012), ECF No. 46-3 (stating that three of the protests filed beginning on June 28, 2011 were at CBP Headquarters for review); Summons at 1, Otter Products, LLC v. United States, 70 F. Supp. 3d 1281 (Ct. Int'l Trade 2015) (No. 13-00269), ECF No. 1 (showing protest filed on July 2, 2013 for entries dated April 23 to July 11, 2012).

importing under the Otter Products LLC Importer of Record Number in 2014, which

is why some prior disclosure tenders were made by LifeProof and some were made by

Otter Products, LLC").   Between May 14, 2013 and September 29, 2014, Otter

submitted interim duty payments in connection with the value of the assists LifeProof

provided during the time period of January 2013 to April 30, 2014 ("PD Payment 3").

See Letter to CBP at 1, LB 99–100 (Sept. 11, 2013), ECF No. 47; Letter to CBP at 1,

LB 121–22 (July 29, 2014), ECF No. 47; Letter to CBP at 1, LB 145–46 (Sept. 29,

2014), ECF No. 47.

   On July 2, 2013, after filing its prior disclosures and its entry into the

reconciliation program, Otter protested CBP's classification of its merchandise in

connection with four entries in 2012.[9]  Summons at 1, Otter Products, LLC v. United

States, 70 F. Supp. 3d 1281 (Ct. Int'l Trade 2015) (No. 13-00269) ("Otter Products I"),

ECF No. 1.  Otter claimed CBP should classify Otter's merchandise under subheading

3926.90.9980, HTSUS, instead of subheading 4202.99.9000, HTSUS.  Otter Products

I, 70 F. Supp. 3d at 1284.  CBP denied Otter's protest on August 1, 2013.  Summons

at 1, Otter Products I, 70 F. Supp. 3d 1281 (No. 13-00269), ECF No. 1.

   Otter filed its complaint in Otter Products I on August 2, 2013.  Otter Products

I, 70 F. Supp. 3d at 1284.  In Otter Products I in addition to reclassification of the

subject entries, Otter sought the refund of overpaid duties in connection with the

---

[9] Otter's subject merchandise in Otter Products I entered between April 23, 2012 and
July 11, 2012 under Entry Numbers 112–7334796–8, 112–7391483–3, 112–7967525–
5, 112–8546857–0.  Otter Products I, 70 F. Supp. 3d at 1284.

value of the assists it provided for the subject merchandise in that case.  Id. at 1284,

1285 n.2.  While that case was pending before this court, Otter informed CBP, which

was reviewing Otter's prior disclosures, of its court challenge to CBP's classification

of similar products.  Letter to CBP at 2, LB 121–22 (July 29, 2014), ECF No. 47; see

also Letter to CBP at 2, LB 145–46 (Sept. 29, 2014), ECF No. 47.  After being informed

of the classification challenge, CBP held the prior disclosure submissions in

abeyance.[10]  See, e.g., Email to Page Hall, LB 9 (Aug. 17, 2015), ECF No. 22-1; see

also CBP Mem. at 1, Ex. A, AK 2–7 (June 1, 2020), ECF No. 46 (closing out prior

disclosures); CBP Mem. at 1, Ex. A, LB 247–49 (July 13, 2020), ECF 47 (closing out

prior disclosure).  This court granted judgment in favor of Otter, determining that its

merchandise should be reclassified under subheading 3926.90.9980, HTSUS.  Otter

Products I, 70 F. Supp. 3d at 1295, 1298.  The Court of Appeals affirmed.  Otter

Products, LLC v. United States, 834 F.3d 1369, 1381 (Fed. Cir. 2016) ("Otter Products

II").

　　　After the Court of Appeals affirmed this court's holding in Otter Products I,

Otter moved this court to enforce its judgment in Otter Products I by reopening a

prior disclosure, which Otter had filed on December 5, 2013 and CBP had closed out

on November 18, 2014.  Otter Products, LLC v. United States, 532 F. Supp. 3d 1345,

1347 (Ct. Int'l Trade 2021) ("Otter Products III").  On August 18, 2021, the court

---

[10] Typically, when CBP receives a prior disclosure submission, it calculates the actual loss of duties, taxes, and fees or actual loss of revenue and notifies the importer, who then has 30 days to tender any additional duties.  See 19 C.F.R. § 162.74(c).

denied Otter's motion to enforce because the judgment in <u>Otter Products I</u> applied

only to the entries included in the protest at issue in that case. <u>Id.</u> at 1347, 1351–53.

On June 1 and July 13, 2020, CBP closed out the three prior disclosures

(involving PD Payments 1, 2, and 3) for processing. <u>See</u> CBP Mem. at 1, Ex. A, AK

2–7 (June 1, 2020), ECF No. 46; CBP Mem. at 1, Ex. A, LB 247–49 (July 13, 2020),

ECF 47.  CBP re-classified Otter's merchandise consistent with <u>Otter Products I</u> and

<u>Otter Products II</u> under the subheading 3926.90.9980, HTSUS, at a duty rate of 5.3

percent, compared the amounts of duty due at that rate to duties Otter had paid

including PD Payments 1–3, and subsequently refunded the difference.[11]  <u>See</u> CBP

Mem. at 1, Ex. A, AK 2–7 (June 1, 2020), ECF No. 46; CBP Mem. Ex. A, LB 247–49

(July 13, 2020), ECF No.  47; CBP Emails at 1, Attachment, AK 435–37 (Sept. 10,

2020), ECF No. 46-2; Letter to Mr. Mastriani at 1, LB 887 (Sept. 17, 2020), ECF No.

47-1.  However, CBP did not pay Otter interest on the overpayments it made, stating

that "[t]here is no provision in the statute or the regulations that calls for the

assessment of interest on refunds associated with prior disclosures."  Email to Mr.

Mastriani at 1, AK 455 (Oct. 20, 2020), ECF No. 46-2.

In this case, Otter seeks interest on its duty overpayments in connection with

its three prior disclosures of assists and errors on merchandise it entered between

---

[11] The refunds CBP paid in connection with the prior disclosures are distinct from the refund CBP issued in accordance with this court's judgment to reliquidate the four entries at issue in <u>Otter Products I</u>. <u>See</u> J., <u>Otter Products I</u>, 70 F. Supp. 3d 1281 (No. 13-00269), ECF No. 57; <u>Otter Products I</u>, 70 F. Supp. 3d at 1284.

Court No. 22-00033                                                        Page 10

January 2006 and April 2014.[12]   Otter filed its complaint on February 1, 2022.

Compl., Feb. 1, 2022, ECF No. 2.  Defendants filed their answer on June 23, 2022.

Answer, June 23, 2022, ECF No. 15.  On September 12, 2022, Otter filed its motion

for judgment on the record.  Pl. Mot.   Defendants filed their response on December

15, 2022.  Def. Br.

## JURISDICTION AND STANDARD OF REVIEW

Otter asserts jurisdiction under 28 U.S.C. § 1581(i) (2018).  "[B]ecause claims

brought under 28 U.S.C. § 1581(i)[] require a waiver of sovereign immunity, the court

must strictly construe the jurisdictional statute."  Wuxi Seamless Oil Pipe Co. v.

United States, 37 C.I.T. 172, 176 (2013) (citing United States v. Sherwood, 312 U.S.

584, 586 (1941)).  "The limits of the waiver of sovereign immunity define a court's

jurisdiction to entertain suit."  Id. (citing Hercules, Inc. v. United States, 516 U.S.

417, 422–23 (1996)).  Further, a plaintiff fails to state a claim unless, when taking

the facts in the complaint as true, its claim is "plausible on its face."  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).

---

[12] The parties do not dispute the material facts concerning the prior disclosures.  Def.
Br. at 6 ("there are times Otter claims to have 'perfected' its prior disclosure on a date
certain . . . when further payments were made later.  Nevertheless, we do not dispute
the critical facts concerning the prior disclosures discussed at pages 5 through 12 of
Otter's brief"); see Pl. Br. at 5–12.

## DISCUSSION

Otter demands interest on its duty overpayments pursuant to 19 U.S.C. §§ 1520(a)(3), 1505(b), (c), arguing it tendered those payments involuntarily, pursuant to CBP's erroneous classification of Otter's merchandise.  Pl. Br. at 21. Defendants argue that neither 19 U.S.C. §§ 1520(a)(3) nor 1505(b), (c) waive sovereign immunity for interest on duty overpayments made in connection with prior disclosures.  Def. Br. at 7–17.  For the following reasons, the action is dismissed for lack of subject matter jurisdiction.

Under the doctrine of sovereign immunity, the United States is immune from suit unless it consents to be sued.  United States v. Sherwood, 312 U.S. 584, 586 (1941).  The terms of the United States' consent to be sued define the Court's jurisdiction.  Hercules, Inc. v. United States, 516 U.S. 417, 422–23 (1996).  The "no-interest rule" precludes suits for interest against the government, absent an express waiver of sovereign immunity.  Library of Congress v. Shaw, 478 U.S. 310, 314–15 (1986), superseded by statute in part, Civil Rights Act of 1991, § 114, as recognized in Landgraf v. USI Film Products, 511 U.S. 244, 251 (1994).

Although the Administrative Procedure Act ("APA") waives sovereign immunity for challenges to agency action, the "no-interest rule" precludes suits for interest in connection with agency action unless there is a specific waiver of sovereign

immunity.[13]   Sandstrom v. Principi, 358 F.3d 1376, 1379–80 (Fed. Cir. 2004).   In

Sandstrom v. Principi, the Court of Appeals held the APA did not waive sovereign

immunity in connection with suit for interest on retroactive veterans' disability

payments:

> Controlling legal authority is directly on point. Under the longstanding
> "no-interest rule," sovereign immunity shields the U.S. government
> from interest charges for which it would otherwise be liable, unless it
> explicitly waives that immunity: The case, therefore, falls within the
> well-settled principle, that the United States are not liable to pay
> interest on claims against them, in the absence of express statutory
> provision to that effect. It has been established, as a general rule, in the
> practice of the government, that interest is not allowed on claims against
> it, whether such claims originate in contract or in tort, and whether they
> arise in the ordinary business of administration or under private acts of
> relief, passed by Congress on special application. The only recognized
> exceptions are, where the government stipulates to pay interest and
> where interest is given expressly by an act of Congress, either by the
> name of interest or by that of damages.

Sandstrom, 358 F.3d at 1379–80 (internal quotations omitted) (quoting Angarica v.

Bayard, 127 U.S. 251, 260 (1888)); see also Shaw, 478 U.S. at 314–15.   A claim for

interest is a claim for damages flowing from the time value of money.   West Virginia

---

[13] Conversely, this Court in a series of cases concluded the APA waived sovereign
immunity where Congress provided for the collection of duties to be distributed to
affected domestic producers ("ADPs"), and the question was whether CBP should
include importers' interest payments in the ADPs set aside for distribution.   See Adee
Honey Farms v. United States, 577 F. Supp. 2d 1362 (Ct. Int'l Trade 2022); Am. Drew
v. United States, 579 F. Supp. 3d 1372 (Ct. Int'l Trade 2022); Hilex Poly Co., LLC v.
United States, 581 F. Supp. 3d 1319 (Ct. Int'l Trade 2022).   In those cases, the agency
action was whether CBP should pay interest into an account as part of the collection
of duties ordered by Congress, not whether a plaintiff could sue the government for
interest.   See Adee Honey Farms, 577 F. Supp. at 1364–65; Am. Drew, 579 F. Supp.
at 1374; Hilex Poly Co., 581 F. Supp. at 1320–21.

v. United States, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages"); see also Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 262 (1999) ("Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" (emphasis in original) (quoting Bowen v. Massachusetts, 487 U.S. 879, 895 (1988)).

Liquidation or reliquidation triggers the statutory waiver of sovereign immunity for suits seeking interest on the overpayment of duties. Specifically, § 1505(c) provides for interest upon monies due in connection with a liquidation or reliquidation:

> Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation. Interest on excess monies deposited shall accrue, at a rate determined by the Secretary, from the date the importer of record deposits estimated duties, fees, and interest or, in a case in which a claim is made under section 1520(d) of this title, from the date on which such claim is made, to the date of liquidation or reliquidation of the applicable entry or reconciliation. The Secretary may prescribe an alternative mid-point interest accounting methodology, which may be employed by the importer, based upon aggregate data in lieu of accounting for such interest from each deposit data provided in this subsection.

19 U.S.C. § 1505(c).[14]  Liquidation is the final computation of duties on entries.  19 C.F.R. § 159.1.

Congress specifically provides for the liquidation and reliquidation of entries. CBP liquidates merchandise within one year from the date of entry or the date of final withdrawal of all merchandise in a warehouse entry,[15] or the entries will be deemed liquidated by operation of law.[16] 19 U.S.C. § 1500(d); 19 C.F.R. § 159.11(a). Pursuant to 19 U.S.C. § 1501, CBP may voluntarily reliquidate to correct errors in appraisement, classification, or any other element of the liquidation, including misinterpretation of law, within 90 days of liquidation or reliquidation.  19 U.S.C. § 1501; 19 C.F.R. § 173.3(a).  Under 19 U.S.C. § 1509(g)(2)(C), CBP may reliquidate within two years of liquidation in cases where an importer claiming preferential duty treatment fails to supply supporting records.  Further, CBP may reliquidate under

---

[14] Section 1520 does not make any provision for interest, rather it authorizes the government to refund duties for excess deposits upon liquidation or prior to liquidation.

> (1) Excess deposits
> Whenever it is ascertained on liquidation or reliquidation of an entry or reconciliation that more money has been deposited or paid as duties than was required by law to be so deposited or paid.

19 U.S.C. § 1520(a)(1).

[15] Upon entry the importer of record files the entry summary for its merchandise, including classification and valuation of the merchandise.  See 19 C.F.R. § 142.11; CBP Form 7501, https://www.cbp.gov/trade/programs-administration/entry-summary/cbp-form-7501.  The importer pays estimated duties on its merchandise based on the entry summary.  19 C.F.R. §§ 141.103, 141.105; see 19 U.S.C. § 1505(a).

[16] CBP notifies the importer by posting the notice of liquidation on its website. 19 C.F.R. § 159.9(a).

Court No. 22-00033                                                                            Page 15

19 U.S.C. § 1520(d) within one year of liquidation where an importer failed to claim preferential treatment under a Free Trade Agreement and the importer petitions for reliquidation.   Finally, after a court decision, CBP may reliquidate goods in accordance with that decision—60 days after the date of this court's decision and 90 days after the date of a decision by the Court of Appeals.  19 C.F.R. § 176.31; <u>see</u> 19 U.S.C. § 1514(a) (following judgment of the court, CBP "shall take action accordingly").

In contrast, the processing of a prior disclosure does not effectuate a liquidation or reliquidation.  Rather, once liquidation of entries is final, an importer subject to penalties for false or material statements or material omissions may limit its liability by filing a "prior disclosure" with CBP.  <u>See</u> 19 U.S.C. § 1592(a), (c).  CBP calculates the actual loss of duties, taxes and fees, or actual loss of revenue and notifies the importer.  19 C.F.R. § 162.74(c).  The importer may tender the amount of its unpaid duties when it makes a prior disclosure or within 30 days after CBP notifies the importer in writing of CBP's calculation.  <u>Id.</u>  CBP refunds any reductions in duties to the importer.  <u>Id.</u>  Thus, when CBP accepts, processes, and ultimately closes out a submitted prior disclosure, it does not reliquidate the merchandise.  <u>See</u> 19 U.S.C. § 1592(c)(4) (silent on liquidation); 19 C.F.R. § 159.2 (silent on liquidation for prior disclosures); <u>see also</u> <u>United States v. Nat'l Semiconductor Corp.</u>, 496 F.3d 1354, 1361 (Fed. Cir. 2007) ("Congress chose not to include violations of section 1592(a) in the carefully carved out exceptions to the finality of liquidations").

Court No. 22-00033                                                                        Page 16

        The court must dismiss Otter's suit because Congress has not waived sovereign

immunity for a suit seeking interest on duties refunded in connection with a prior

disclosure.  The "no-interest rule" bars Otter from sustaining an action for interest

here absent an express waiver.  See Shaw, 478 U.S. at 314–15.  Section 1505(c)

provides for the payment of interest calculated from the deposit or claim date to when

goods are liquidated, meaning when CBP calculates the final duties, and, if different

from the deposited duties, the difference is refunded or paid, and CBP determines

any interest due.  See 19 U.S.C. § 1505(b), (c).  Section 1520 authorizes CBP to refund

duties that have been deposited in excess.  Id. § 1520(a)(1).  Without mentioning

interest, § 1520(a) authorizes refund of duties when, inter alia, it has been

"ascertained that excess duties, fees, charges, or exactions have been deposited or

paid."  Id. § 1520(a)(4).  Neither section addresses duties paid in connection with prior

disclosures.  See id. § 1505(b) (CBP shall "refund any excess moneys deposited,

together with interest thereon, as determined on a liquidation or reliquidation"); id.

§ 1520(a)(4); see also id. § 1505(c) ("Interest on excess money deposited shall accrue .

. . to the date of liquidation or reliquidation of the applicable entry or reconciliation");

19 C.F.R. § 24.36(a)(1) ("the refund shall include interest [accruing] to the date of

liquidation or reliquidation of the applicable entry").  Although § 1592 requires an

importer to submit interest for loss of duties, 19 U.S.C. § 1592(c)(4)(B), an importer

does not receive interest on its overpayments in connection with prior disclosures

because the statute does not provide for interest on duty overpayments, see id.

§§ 1505(b), (c), 1520(a); 19 C.F.R. § 162.74(c).   Rather, the waiver of sovereign immunity for suits seeking interest on overpayments exists only in connection with liquidation or reliquidation. See 19 U.S.C. § 1505(c).

In this case Otter failed to account for the assists and misclassified entries resulting in underpaid duties.   After its entries liquidated, Otter filed three prior disclosures and tendered PD Payments 1–3 to compensate for the loss of duties.  Otter then protested the classification of its merchandise on four entries that had liquidated but for which the time to protest the liquidation had not expired. See Summons at 1, Otter Products I, 70 F. Supp. 3d 1281 (No. 13-00269), ECF No. 1.  When CBP denied its protest, Otter filed a summons and complaint with this Court.  While Otter's case challenging the denial of its protest was ongoing, CBP held open Otter's prior disclosures for the entries that had already liquidated and for which liquidation had become final. See Otter Products III, 532 F. Supp. 3d at 1351–52; Pl.'s Mot. Enforce Ct.'s J. at 4, Otter Products III, 532 F. Supp. 3d 1345 (No. 13-00269), ECF No. 71; see, e.g., Email to Page Hall, LB 9 (Aug. 17, 2015), ECF No. 22-1.  After this court issued judgment for Otter and the Court of Appeals affirmed, CBP closed out the prior disclosures and refunded the additional duties tendered resulting from CBP's misclassification.   Although CBP refunded duty overpayments under 19 C.F.R. § 162.74(c) for the prior disclosures that had been held in abeyance, it did not, and could not, reliquidate the entries, and therefore no authority provides for interest on those overpayments.   Section 1505's express waiver of interest payments

Court No. 22-00033                                                              Page 18

unambiguously applies only to interest on deposits in connection with liquidated entries. Thus, without a specific waiver of sovereign immunity, the Court lacks subject matter jurisdiction over Otter's claim for interest in connection with its overpayments on tendered prior disclosures under the no-interest rule.

Otter cites this court's previous opinion in Otter Products I for its proposition that it is entitled to interest on duty overpayments because it made those payments involuntarily. Pl. Br. at 21–22; see Otter Products I, 70 F. Supp. 3d at 1296–98. However, the voluntariness of payments is inapposite here. Otter Products I sustained Otter's allegation that CBP had improperly classified Otter's merchandise. The court's ruling did not depend upon the voluntariness of Otter's payment, but rather upon whether its entries had liquidated. See Otter Products I, 70 F. Supp. 3d at 1297 (the classification "is not yet final and conclusive because it is the subject of a valid protest"). In Otter Products I the entries had been protested and thus had not liquidated. In this case, Otter seeks interest on the refund it received in connection with a prior disclosure for entries that had already liquidated and not been protested.

Otter also argues that Defendants' misclassification of Otter's entries provided Defendants an unjust monetary benefit. Pl. Br. at 20, 26–29. The classification and valuation of merchandise is a shared responsibility of CBP and the importer. H.R. Rep. 103-361, at 136 (describing requirement in section 637 of the North American Free Trade Agreement Implementation Act, 19 U.S.C. § 1484, that importers use reasonable care in making entries establishes a "shared responsibility" between CBP

Court No. 22-00033                                                          Page 19

and the trade community). Otter imported its merchandise under thousands of entries since 2006, which CBP liquidated before Otter discovered its failure to account for assists and misclassification errors in those entries.  Otter failed to identify its errors or protest the misclassification of its entries for years.   Addressing those assists and errors for entries that had already liquidated, Otter filed three prior disclosures to limit its liability for its violations of § 1592(a), which CBP held in abeyance pending this court's decision in Otter Products I and thus allowing Otter to obtain refunds of duty overpayments tendered in connected with those prior disclosures.  However, Otter does not contest that the entries underlying those prior disclosures have long since liquidated.  It is unclear to the court why, when Otter shares responsibility for the entry process and the duty payments made in connection with that process, the result here is unjust.  More importantly, without jurisdiction the court cannot address the question.

## CONCLUSION

In accordance with the foregoing, Otter's complaint is dismissed for lack of subject matter jurisdiction.  Otter's motion for judgment on the record is denied as moot.  The court will issue judgment separately.

                                                         /s/ Claire R. Kelly
                                                        Claire R. Kelly, Judge

Dated:        March 29, 2023
              New York, New York